Samuel L. FELTON, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 90–965.

United States Court of Veterans Appeals.

Dec. 21, 1994.

As Amended Dec. 28, 1994.

David A. Belinky, for appellant.

Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, Adrienne Koerber, Deputy Asst. Gen. Counsel, and Paul J. Hutter were on the pleadings, for appellee.

Before KRAMER, IVERS, and STEINBERG, Judges.

IVERS, Judge, filed the opinion of the Court, in which KRAMER, Judge, joined.

STEINBERG, Judge, filed a separate opinion, concurring in part and dissenting in part.

IVERS, Judge:

The case is before the Court on the appellant's application for an award of reasonable attorney fees and expenses under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. For the reasons set forth below, we deny the appellant's application under the EAJA for attorney fees and expenses.

## I. FACTUAL BACKGROUND

In the underlying case, the appellant appealed from a June 7, 1990, Board of Veterans' Appeals (BVA) decision denying the release of VA funds suspended pursuant to 38 C.F.R. § 3.558(c)(2), because VA found him to be incompetent. The appellant served in the United States Army from March 12, 1943, to November 13, 1945, and then in the United States Air Force from October 13, 1954, to June 22, 1956. Record (R.) at 1–2. He was discharged from the Air Force for a 100% disability, dementia praecox, mixed type. R. at 2–3. He was hospitalized at Philadelphia General Hospital from July 11, 1957, to July 22, 1957, and again from August 3, 1957, to September 10, 1957. R. at 145. He was transferred to the VA hospital in Coatesville, Pennsylvania, on September 10, 1957, where he was diagnosed as having schizophrenia, chronic, undifferentiated type "X & P." R. at 4. On April 29, 1958, he was rated incompetent. R. at 12. He remained continually hospitalized at the Coatesville VA facility until 1985. *Id.* In March 1985, he was transferred to the VA Medical Center at Chillicothe, Ohio, in order to be near his family. R. at 7. On June 7, 1985, he was discharged to the care of his son and daughter-in-law, although he was found at the time to be "not competent for VA purposes." R. at 8. The appellant's son was then serving as the appellant's custodian. R. at 15.

On May 20, 1987, at VA's request, David A. Belinky, Esq., filed an Application for Appointment of Guardian in the Franklin County, Ohio, Probate Court. *See* R. at 25. The Probate Court referee recommended that the appellant be found competent and recommended that the Probate Court dismiss Mr. Belinky's application. R. at 28. On September 1, 1987, the Probate Court approved the referee's recommendation and dismissed Mr. Belinky's application. R. at 198.

In June 1987, the appellant petitioned the Cleveland, Ohio, VA Regional Office (RO) that VA rate him as competent. R. at 16. The RO rated the appellant as competent on September 8, 1987, with an effective date of May 5, 1987. R. at 42–43.

Pursuant to its own internal administrative procedures, VA conducted a followup field examination on December 7, 1987. R. at 47–49. As a consequence of that examination, the RO proposed, on February 24, 1988, to rate the appellant incompetent. R. at 58. The RO rated him incompetent for VA purposes on May 11, 1988 (R. at 83–84), more than one year after the effective date of the VA rating of competency (R. at 42–43). On June 16, 1988, Mr. Belinky agreed to serve as the appellant's VA-appointed custodian-in-fact. R. at 199; *see* R. at 152–53, 155. The RO issued another rating decision on October 31, 1988, finding the appellant incompetent. R. at 171–74.

In February 1989, on the appellant's behalf, U.S. Senator Glenn wrote to BVA Chairman Eaton, expressing his opinion that the VA decision in this case was in error. R. at 191–92. On February 21, 1989, through his attorney, Mr. Belinky, acting on the appellant's behalf, the appellant also filed an appeal, with attachments, to the BVA. R. at

193–99. In June 1989, to bolster his case to the BVA, the appellant, through Senator Glenn's office, submitted a May 22, 1989, mental hygiene report, apparently from his own VA psychiatrist, wherein it was concluded that the appellant was competent for VA purposes. R. at 218–19.

The BVA issued its first decision on September 28, 1989, remanding the decision with instructions that "the office of original jurisdiction should review the veteran's claim with consideration to the provisions of 38 C.F.R. § 3.558(c)(2)." R. at 231. After that review and a continued rating of incompetency by the RO on November 9, 1989, R. at 237, the BVA, on June 7, 1990, held that the appellant was incompetent to handle his own assets and that he was clearly incompetent for VA purposes. *Samuel L. Felton*, BVA 90–18233, at 4 (June 7, 1990). Consequently, a lump-sum payment of the funds withheld under 38 C.F.R. § 3.557 was denied. The BVA then determined that 38 C.F.R. § 3.558(c)(2) prohibited the release of lump-sum payments to a veteran who was re-rated incompetent after having been rated competent and who has no proper dependent. The BVA determined that the appellant had no proper dependent. *Felton*, BVA 90–18233, at 4–5. More important, the BVA determined that 38 C.F.R. § 3.558(c)(2) specifically empowered VA to withhold funds due veterans who are rated competent for at least six months if they are subsequently re-rated incompetent (and lack a proper dependent), if funds had not yet been disbursed. *Id.* The BVA found, as a matter of fact, that the appellant was re-rated incompetent, effective May 11, 1988, some 12 months after May 5, 1987, the effective date of his initial rating as competent by VA. *Id.* at 6.

The appellant appealed the BVA decision to this Court. The appellant, the Secretary, and the Disabled American Veterans (DAV), as amicus curiae, presented argument on June 12, 1992. On January 14, 1993, the Court issued a decision, which was vacated by per curiam order of the Court on March 11, 1993, and replaced with another opinion. Except for certain clarifications regarding the scope of the opinion, our March 11, 1993, decision was substantially the same as the earlier decision. *Felton v. Brown*, 4 Vet. App. 363, 365 (1993). In that decision, we invalidated 38 C.F.R. § 3.558(c)(2) (1991) as inconsistent with the Secretary's statutory authority.

On August 16, 1993, and September 16, 1993, the appellant filed two separate applications for an award of reasonable attorney fees and expenses under the EAJA. In a November 4, 1993, order, the Court consolidated the two applications. On March 24, 1994, the Court entered judgment in the underlying decision on the merits. On March 25, 1994, given the Court's intervening decisions on EAJA-related matters, the Court ordered the appellant and the Secretary to file supplemental memoranda regarding the issues presented by the EAJA applications. The appellant filed a supplemental memorandum on April 18, 1994. The Secretary filed a supplemental memorandum on April 21, 1994.

## II. ANALYSIS

### A. *Statutory Background*

The EAJA was enacted to counter the monetary disincentive faced by many individuals when affected by governmental action. Justice O'Connor of the United States Supreme Court summarized the history and purpose of the EAJA in a 1989 case:

> In 1980, Congress passed the EAJA in response to its concern that persons "may be deterred from seeking review of, or defending against, unreasonable governmental action because of the expense involved in securing the vindication of their rights." As the Senate Report put it:
>
> > "For many citizens, the costs of securing vindication of their rights and the inability to recover attorney fees preclude resort to the adjudicatory process.... When the cost of contesting a Government order, for example, exceeds the amount at stake, a party has no realistic choice and no effective remedy. In these cases, it is more practical to endure an injustice than to contest it."
>
> The EAJA was designed to rectify this situation by providing for an award of a reasonable attorney's fee.

*Sullivan v. Hudson*, 490 U.S. 877, 883, 109 S.Ct. 2248, 2253, 104 L.Ed.2d 941 (1989) (citations omitted).

On October 29, 1992, Congress enacted section 506 of the Federal Courts Administration Act of 1992, Pub.L. No. 102–572, § 506, 106 Stat. 4506, 4513 (1992) (FCAA). Section 506(a) of the FCAA amended 28 U.S.C. § 2412(d)(2)(F) to make subsection (d) of 28 U.S.C. § 2412 applicable to this Court. Section 506(b) of the FCAA limited such application "to any case pending before the United States Court of Veterans Appeals on the date of the enactment of this Act [October 29, 1992]" (found at 28 U.S.C. § 2412 note (Application of 1992 Amendment to Pending Cases)).

In relevant part, the EAJA provides in 28 U.S.C. § 2412:

> (d)(1)(A) Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action ..., including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

> (B) A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award ... and the amount sought, including an itemized statement.... The party shall also allege that the position of the United States was not substantially justified. Whether or not the position of the United States was substantially justified shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought.

> ....

> (2) For the purposes of this subsection—

> ....

> (D) "position of the United States" means, in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based....

28 U.S.C. § 2412(d)(1)(A)–(B), (2)(D).

**B. *Application of the EAJA***

**1. *Uncontested Issues***

This case was pending on or after October 29, 1992, and the EAJA is thus applicable. *Jones v. Brown*, 41 F.3d 634, 637–38 (Fed. Cir.1994), *reversing* 6 Vet.App. 101 (1993). The appellant filed two EAJA applications with this Court, on August 16, 1993, and September 16, 1993, prior to the Court's March 24, 1994, entry of judgment. However, the Court treats such premature applications as if they were later filed. *Stillwell v. Brown*, 6 Vet.App. 291, 300 (1994); *see Brewer v. Am. Battle Monuments Comm'n*, 814 F.2d 1564, 1569–70 (Fed.Cir.1987).

The Secretary does not argue that the appellant is not a prevailing party. In addition, the Secretary does not argue that there are special circumstances in this case that would make an award unjust.

**2. *Contested Issues***

**a. *Substantial Justification of VA's Position***

**i. *Caselaw***

The Secretary argues that VA's position during the administrative and judicial phases of this action was substantially justified. Since the appellant has alleged that VA's position was not substantially justified, the burden to demonstrate substantial justification rests with the VA Secretary. *Stillwell*, 6 Vet.App. at 301; *Cook v. Brown*, 6 Vet.App. 226, 236 (1994); *see Community Heating & Plumbing v. Garrett*, 2 F.3d 1143, 1145 (Fed.Cir.1993); *Gavette v. OPM*, 808 F.2d 1456, 1467 (Fed.Cir.1986) (en banc); *see also Moseanko v. Yeutter*, 944 F.2d 418, 427 (8th Cir.1991); *Essex Electro Engineers, Inc. v. United States*, 757 F.2d 247, 252 (Fed.Cir. 1985) (citing, inter alia, *Ellis v. United States*, 711 F.2d 1571 (Fed.Cir.1983)); *De-*

*vine v. Sutermeister,* 733 F.2d 892 (Fed.Cir. 1984).

■ In assessing whether VA's position was substantially justified, we must analyze the entirety of VA's conduct, both VA's litigation position and its action or inaction prior to the litigation. 28 U.S.C. § 2412(d)(1)(B), (D); *see Stillwell,* 6 Vet.App. at 301–02; *see also Trahan v. Brady,* 907 F.2d 1215, 1218 (D.C.Cir.1990). We look to not only the Government's position in the litigation before this Court "but also the reasonableness of 'the underlying government action at issue.'" *Wilderness Society v. Babbitt,* 5 F.3d 383, 388 (9th Cir.1993) (quoting *Bay Area Peace Navy v. United States,* 914 F.2d 1224, 1230 (9th Cir.1990)).

The Supreme Court addressed the meaning of "substantially justified" in *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988):

> We are of the view, therefore, that as between the two commonly used connotations of the word "substantially," the one most naturally conveyed by the phrase before us here is not "justified to a high degree," but rather "justified in substance or in the main"—that is, justified to a degree that could satisfy a reasonable person.

*See also Stillwell,* 6 Vet.App. at 302. In *Underwood,* the Supreme Court also noted that "a position can be justified even though it is not correct, and we believe it can be substantially (i.e., for the most part) justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact." *Underwood,* 487 U.S. at 566 n. 2, 108 S.Ct. at 2550 n. 2. The test is one of reasonableness, not the agency's own beliefs regarding a particular policy. *Andrew v. Bowen,* 837 F.2d 875, 878–89 (9th Cir.1988).

In *Stillwell,* this Court announced a test for evaluating whether VA's position was substantially justified in the administrative and judicial phases:

> [T]he VA must demonstrate the reasonableness, in law and fact, of the position of the VA in a matter before the Court, and of the action or failure to act by the VA in a matter before the VA, based upon the totality of the circumstances, including merits, conduct, reasons given, and consistency with judicial precedent and VA policy with respect to such position, and action or failure to act, as reflected in the record on appeal and the filings of the parties before the Court.

*Id.,* 6 Vet.App. at 302 (citations omitted).

In his EAJA applications, the appellant argues that the Court's decision in *Felton* on the merits, which invalidated VA's regulation, necessarily leads to the conclusion that the Government's position was not substantially justified. In *Trahan,* 907 F.2d at 1219–20, the Court of Appeals for the District of Columbia Circuit examined decisions from various courts of appeals and rejected the argument that violation of an agency's regulations or statutory mandate necessarily meant that the Government's position could not have been substantially justified. We agree with the reasoning that there is no per se rule; rather, our analysis, as outlined in the Supreme Court's *Underwood* decision, requires us to determine whether the Government's position was "'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *Id.,* 487 U.S. at 565, 108 S.Ct. at 2549; *see Stillwell,* 6 Vet.App. at 302. In addition, "[t]he government's failure to prevail does not raise a presumption that its position was not substantially justified." *Kali v. Bowen,* 854 F.2d 329, 332 (9th Cir.1988). As the United States District Court for the District of Columbia has said: "Whether agency action was contrary to law or not is no longer the main question. Whether the agency action was contrary to law may only help inform the court of the reasonableness of the action and the litigation position." *National Law Center on Homelessness and Poverty v. U.S. Dept. of Veterans Affairs,* 799 F.Supp. 148, 153 (D.D.C.1992).

As the *Stillwell* Court reasoned, the reasonableness of VA's conduct can be affected by the emerging state of veterans' benefits law. Since the creation of this Court under the Veterans' Judicial Review Act (VJRA), Pub.L. No. 100–687, Div. A, 102 Stat. 4105 (1988), judicial review in this Court "has often resulted in new, different, or more strin-

gent requirements for adjudication." *Stillwell,* 6 Vet.App. at 303. Consequently, "some cases before this Court are ones of first impression involving good faith arguments of the government that are eventually rejected by the Court." *Ibid.; see also De Allende v. Baker,* 891 F.2d 7, 12–13 (1st Cir.1989) (where case was one of first impression, Government's position was "never without substantial justification" given decisions in parallel cases); *Martinez v. Secretary of Health and Human Services,* 815 F.2d 1381, 1383 (10th Cir.1987) (finding Government's position to be substantially justified where applicable law was unclear or in flux; stating that " 'the more clearly established are the governing norms, and the more clearly they dictate a result in favor of the private litigant, the less "justified" it is for the government to pursue or persist in litigation.' ") (quoting *Spencer v. NLRB,* 712 F.2d 539, 559 (D.C.Cir.1983), *cert. denied,* 466 U.S. 936, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984)).

We emphasize, however, that we are not adopting a per se rule that a case of first impression will always render the Government's position substantially justified. On the contrary, whether a case is one of first impression is only one factor for the Court to consider. In *Edwards v. Griepentrog,* 783 F.Supp. 522, 525 (D.Nev.1991), the United States District Court for the District of Nevada wrote: "[T]he EAJA does not suggest that an agency's position is substantially justified because its policy goes years without challenge or change." In a similar vein, the United States Court of Appeals for the Ninth Circuit has said: "A lack of judicial precedent adverse to the government's position does not preclude a fee award under the EAJA." *Ramon–Sepulveda v. INS,* 863 F.2d 1458, 1459 (9th Cir.1988); *see also Thompson v. Sullivan,* 980 F.2d 280, 282–83 (4th Cir.1992) (Government's position was not "substantially justified" where the Secretary argued contrary to, and the agency misapplied, "well-established law" of the United States Court of Appeals for the Fourth Circuit regarding the proper method to evaluate subjective complaints of pain); *Bullfrog Films, Inc. v. Wick,* 959 F.2d 782, 785 (9th Cir.1992) (appellate court did not give as much weight

as district court gave to fact that regulation had been in effect for many years and had gone unchallenged); *Perket v. Secretary of Health and Human Services,* 905 F.2d 129, 135 (6th Cir.1990) (quoting language from *Spencer* ); *Andrew,* 837 F.2d at 879 (the EAJA does not suggest that agency's position is substantially justified just because that position goes years without challenge); *Oregon Environmental Council v. Kunzman,* 817 F.2d 484, 498 (9th Cir.1987) ("Although the absence of adverse precedent on an issue is relevant to the determination of the 'substantially justified' question, it is not dispositive."); *Salmi v. Secretary of Health and Human Services,* 712 F.Supp. 566, 569–70 (W.D.Mich.1989) ("substantial justification" not found where "[n]o reasonable person could be satisfied that the Secretary was justified ... in failing to apply *his own longstanding* de minimis construction of the severity requirement") (emphasis of "longstanding" added); *Mager v. Heckler,* 621 F.Supp. 1009, 1012 (D.Colo.1985) (same with respect to incorrectly applying the Secretary's own regulations *and* ignoring "Tenth Circuit law with regard to consideration of pain"); *McKenzie v. Heckler,* 589 F.Supp. 1152, 1163 (N.D.Ill.1984) (same as *Salmi* with respect to disability severity regulation). In *Curry v. Block,* 608 F.Supp. 1407, 1415 (S.D.Ga.1985), the United States District Court for the Southern District of Georgia wrote in response to the Government's argument that the case there was one of first impression:

> The Government stresses that the nature of the Department's responsibility was a question of first impression when this Court decided *Curry v. Block.* This is true. Without judicial interpretation of the statute, the legislative history and statutory language were the only law upon which the Government could draw in formulating its argument before this Court. [Citation omitted.] These sources, the statute's language and history, pointed to *only one reasonable statutory interpretation.* . . . The novelty of the [statutory] issue did not entitle the Government to advocate an alternative, and unreasonable, interpretation of the statute.

(Emphasis added.) Indeed, the *Curry* Court labelled the Government's characterization of Congressional intent in enacting the statute at issue "perverse." *Ibid.* As we discuss below, we do not have such conduct in the case at bar.

We also note a recent case that awarded attorney fees. In that case, the United States Court of Appeals for the Seventh Circuit referred to a Supreme Court decision stating that certain Government policies were " 'manifestly contrary to the statute' " and that the Secretary's position was " 'unconvincing' " and " '[made] little sense' " as well as to various circuit courts' "strong disapproval" of certain regulations. *Marcus v. Shalala,* 17 F.3d 1033, 1038 (7th Cir.1994) (quoting *Sullivan v. Zebley,* 493 U.S. 521, 539, 541, 110 S.Ct. 885, 896, 897, 107 L.Ed.2d 967 (1990)). The Seventh Circuit concluded that the language in those cases "refute[d] the Secretary's contention that the questions involved were close ones." *Marcus,* 17 F.3d at 1038. In the case at bar, however, there is no spoken basis in the underlying decision on the merits or in our jurisprudence in general to refute the reasonableness of the Secretary's position in this case. The *Felton* decision was the first decision to rule on the merits on the validity of the regulations; in *Marcus,* the unreasonableness of the agency's prelitigation adoption of the regulations at issue was bolstered by decisions of various circuit courts of appeals. *Ibid.* Admittedly, this Court is a new court and its decisions are reviewable only by the United States Court of Appeals for the Federal Circuit. Nevertheless, unlike *Marcus,* where numerous circuit courts of appeals had refuted the Government's argument that the questions involved were even close ones, *id.,* 17 F.3d at 1038, here there was no chorus of circuit courts of appeals expressing "strong disapproval" of the regulation adopted by VA prior to the litigation.

■ We note, however, that a regulation may not amend a statute. *See Iglesias v. United States,* 848 F.2d 362, 366–67 (2d Cir. 1988) (quoting *United States v. Calamaro,* 354 U.S. 351, 359, 77 S.Ct. 1138, 1143–44, 1 L.Ed.2d 1394 (1957), and *Manhattan General Equipment Co. v. Commissioner,* 297 U.S.

129, 134, 56 S.Ct. 397, 399–400, 80 L.Ed. 528 (1936), and citing *Koshland v. Helvering,* 298 U.S. 441, 447, 56 S.Ct. 767, 770, 80 L.Ed. 1268 (1936)). The mere existence of a duly promulgated regulation does not render an agency's position substantially justified. There may be instances where the agency's action on the merits was unreasonable, i.e., not "justified to a degree that could satisfy a reasonable person." *Underwood,* 487 U.S. at 565, 108 S.Ct. at 2550; *see also Federal Election Comm'n v. Political Contributions Data, Inc.,* 995 F.2d 383, 386–87 (2d Cir.1993) (where prior panel had held agency action to be "unreasonable" in light of plain meaning of statute, legislative history, and evidence, lack of substantial justification for agency's position was conclusively established). *But see id.,* 995 F.2d at 387 (Jacobs, J., concurring in part and dissenting in part) (stating that "in the EAJA stage, the question is whether it was unreasonable for the [agency] *to litigate* the reasonableness of its statutory interpretation.") (emphasis added).

### ii. *Application of the Caselaw to the EAJA Applications*

Turning to the EAJA applications in the instant case, we examine the Government's position during the administrative and litigation phases. In the underlying case, the appellant had argued that VA did not correctly apply a VA regulation, 38 C.F.R. § 3.557 (1991). In his brief, the Secretary had argued that the proper inquiry involved the application of a different regulation, 38 C.F.R. § 3.558(c)(2) (1991). However, the validity of 38 C.F.R. § 3.558(c)(2) was not questioned until the DAV filed its amicus curiae brief on April 22, 1992.

In our decision on the merits, we noted that an agency's interpretation of a statute "will generally be sustained as long as it reflects a permissible construction of the statute." *Felton,* 4 Vet.App. at 370 (citing *NLRB v. United Food & Commercial Workers Union,* 484 U.S. 112, 123, 108 S.Ct. 413, 420–21, 98 L.Ed.2d 429 (1987), and *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984)). We held that the regulation in question was not

*authorized* by the statute. We did not consider, however, whether VA was substantially justified in litigating the issue. Although we held in our decision on the merits that the statutory mandate of 38 U.S.C. § 5503 was clear, *Felton*, 4 Vet.App. at 368–69, as we discuss below, the Secretary's arguments were reasonable.

In arriving at the conclusion that the Government's position was substantially justified, we first examine the relevant statutory and regulatory provisions. Section 5503(b)(1)(A),(B) of title 38 of the United States Code reads as follows:

> (A) In any case in which a veteran having neither spouse nor child is being furnished hospital treatment or institutional or domiciliary care without charge or otherwise by the United States, or any political division thereof, is rated by the Secretary in accordance with regulations as being incompetent, and the veteran's estate (excluding the value of the veteran's home unless there is no reasonable likelihood that the veteran will again reside in such home), from any source equals or exceeds $1,500, further payments of pension, compensation, or emergency officers' retirement pay shall not be made until the estate is reduced to $500.

> (B) The amount which would be payable but for this paragraph shall be paid to the veteran in a lump sum; however, no payment of a lump sum herein authorized shall be made to the veteran until after the expiration of six months following a finding of competency and in the event of the veteran's death before payment of such lump sum no part thereof shall be payable.

At the time of the Court's decision on the merits, section 3.558(c) of title 38 of the Code of Federal Regulations read:

> Any amount not paid because of the provisions of § 3.557 will be awarded:

> (1) To a veteran who is currently rated competent by VA after the expiration of 6 months following the effective date of the rating of competency....

> (2) For a veteran rated incompetent by VA who had met the provisions of subparagraph (1) of this paragraph and who was again rated incompetent by VA before award action could be taken thereunder, *if he or she has a proper dependent,* and if there was no proper error in the intervening rating of competency. For the purpose of amounts not paid because of the provisions of § 3.557(a), a proper dependent is a spouse, child, or dependent parent. For the purpose of amounts not paid because of the provisions of § 3.557(b), proper dependent is a spouse or child.

(Emphasis added.) This version of 38 C.F.R. § 3.558(c) had been in effect since December 1971.

Although we held in the underlying case on the merits that the Secretary's interpretation of the statute, as set forth in 38 C.F.R. § 3.558(c)(2), was in excess of statutory authority, we cannot say that the Secretary's position had no reasonable basis in law or in fact. The specific situation envisioned by the Secretary in promulgating the ultimately invalidated regulation had not been expressly referred to in the relevant statute or its legislative history. The underlying case on the merits clearly did not involve agency action in complete disregard of an authorizing statute. *See Wilderness Society,* 5 F.3d at 388–89. Rather, the agency action—specifically, 38 C.F.R. § 3.558(c)(2), the regulation applied by VA to the appellant's case—involved the application of a statute to an issue which was not expressly referred to in the statute.

The history of the regulation is helpful in our assessment of the Government's position both prior to litigation, i.e., in promulgating the regulation at issue and in applying the regulation to the appellant's case, and during litigation, i.e., in arguing for its position before this Court. The history of 38 C.F.R. § 3.558(c)(2) dates back to a 1954 precedential opinion of the General Counsel of VA. That opinion, *O.G.C. 84–54* (May 10, 1954), attempted to address the situation where a VA-hospitalized veteran who had been rated incompetent, then rated competent, and finally rerated incompetent over eight months after the initial rating of competency. Quoting with approval the opinion of the chief attorney of the Fargo, North Dakota, RO, the precedential opinion interpreted the stat-

utes and regulations existing at that time, noting that

[i]n the light of the legislative history mentioned above a question occurs as to whether it might not also have been within the intention of Congress that such payment would not be made if it should also appear that at the time an award was being processed the veteran's competency was in doubt, even though 6 months had expired following the initial finding of competency.

*O.G.C. 84–54* at 2. The precedential opinion concluded:

Although the veteran technically met the requirements of [the VA regulation] for payment of the lump sum, i.e. a rating of competency for six months, it seems apparent from the facts stated above that the veteran had not regained his competency. Further, since the veteran has again been rated as incompetent, (such rating being now in effect) it would be contrary to the spirit and intent of Public Law 662, 79th Congress, as amended by Public Law 194, 81st Congress, to increase his estate by the payment of the witheld [sic] compensation.

*O.G.C. 84–54* at 3–4.

In January 1971, the VA General Counsel discussed a case involving a veteran who was rated incompetent by VA and hospitalized and who was married during a trial release from hospitalization. The veteran was rated competent for a period of more than six months but was then rerated incompetent. Distinguishing that situation from the factual situation presented in *O.G.C. 84–54*, the 1971 precedential opinion said that the veteran was entitled to payment of withheld benefits because he had a wife and there was no likelihood of passing a sizable estate to distant relatives. *O.G.C. 4–71* at 2–3 (Jan. 8, 1971). Thus, under the reasoning of the 1971 precedential opinion, a veteran who was rated competent for more than six months but who was rerated incompetent before action could be taken to pay the withheld benefits was entitled to payment following the incompetency rerating if he had a proper dependent such as a wife. This reasoning was adopted when VA amended 38 C.F.R.

§ 3.558 in 1971. *See* 36 Fed.Reg. 25,225 (1971).

From this brief reading of the history of the regulation that we invalidated in the underlying decision, it appears that the regulation was premised on a precedential opinion that attempted to distinguish a prior precedential opinion that, in turn, had tried to interpret a gap in a statute and a VA regulation. In *O.G.C. 84–54*, the VA General Counsel posed a reasonable question and examined the then-extant statutes, regulations, and legislative history to arrive at its conclusion. The issuance of *O.G.C. 4–71* and the promulgation of 38 C.F.R. § 3.558(c)(2) in 1971 attempted to grapple once again with the ramifications of the 1954 precedential opinion. Indeed, whereas the 1954 precedential opinion had imposed a requirement that VA not disburse previously withheld benefits until after the expiration of a period of six months plus the time necessary to disburse payment, the 1971 precedential opinion and the regulation retreated from that requirement somewhat, mandating such payment once a competency rating had been in effect for six months where a veteran had a proper dependent. Given the statutory silence on the particular matter and the lack of a conflict with adverse precedent, the Secretary's position during this part of the administrative phase, i.e., in promulgating the regulation at issue, was substantially justified.

When VA applied 38 C.F.R. § 3.558(c)(2) to the appellant's case, the regulation was not questioned until the DAV filed an amicus curiae brief in this Court. Given the existence of the regulation, whose validity had not yet been questioned in this case, the Secretary's position during this part of the administrative phase was also substantially justified.

We further hold that the Secretary's position during the judicial phase of this proceeding was "reasonable in law and fact based upon the totality of the circumstances as reflected in the record on appeal and the filings of the parties before the Court." *Stillwell*, 6 Vet.App. at 304. Before this Court, the Secretary argued that the statutory language could be interpreted as a "floor"

prohibiting lump-sum payments *before* the specified six-month waiting period had expired but never as a "ceiling" mandating payment *after* the expiration of the six-month waiting period. In essence, the Secretary argued that the statute did not address the specific situation envisioned by the regulation, i.e., the situation where a veteran was rerated incompetent after the six-month waiting period described in the statute but before any VA action on an award was taken. In light of the regulation's history, the Secretary's position in the underlying case on the merits was substantially justified. *See Abel Converting, Inc. v. United States*, 695 F.Supp. 574, 577 (D.D.C.1988) (when a court invalidates an agency's interpretation of its regulation, "the court is in effect finding that the interpretation is, at best, unreasonable"; however, a "rare circumstance" in support of a finding of substantial justification "is when the agency relies upon its prior interpretation of the regulation or judicial precedent."). The Secretary's position "was a good faith effort to interpret an evolving area of" the law, and he "did not take a position which was unreasonable or *in direct conflict with established precedent." Citizens for Environmental Quality v. United States*, 731 F.Supp. 970, 997 (D.Colo.1989) (emphasis added). In *Johnson v. U.S. Department of Housing and Urban Development*, 939 F.2d 586, 590 (8th Cir.1991), the United States Court of Appeals for the Eighth Circuit held that the Government's position was substantially justified. The Eighth Circuit stated:

> [The Government's position] was not unreasonable. The issue was a close one. Neither the statutory language nor the legislative history of the [act in question] expressly referred to voluntary mortgage insurance termination, *although, as noted in our prior opinion, a literal application of the statutory term "change in status" and the relevant legislative history supported a broader interpretation.*

(Emphasis added.) Consequently, the Secretary's position before this Court during the judicial phase also had a reasonable basis in law and in fact and was, therefore, substantially justified.

The Court's analysis in *Stillwell* is also very helpful in this case. In *Stillwell*, the Secretary moved to remand the BVA decision because of an intervening decision by this Court in *Gregory v. Brown*, 5 Vet.App. 108 (1993). In *Gregory*, the Court had held that the first sentence of a duly promulgated regulation, 38 C.F.R. § 3.53(a) (1992), was inconsistent with the plain meaning of the authorizing statute, 38 U.S.C.A. § 101(3), and was therefore "unlawful, as exceeding the authority of the Secretary." *Gregory*, 5 Vet. App. at 112 (citing 38 U.S.C.A. § 7261(a)(3)(C) (West 1991); *Gardner v. Derwinski*, 1 Vet.App. 584, 588 (1991)). On the appellant's application for attorney's fees and expenses under the EAJA, the Court held that VA's actions prior to the issuance of *Gregory* were "reasonable in law and fact based upon the totality of circumstances" and denied the appellant's EAJA application. *Id.*, 6 Vet.App. at 304.

In the instant case, the Court held that the statute involved, 38 U.S.C. § 5503(b)(1)(A)–(B), was clear in that it mandated a lump-sum payment to a veteran who had been previously rated incompetent but had since been rated competent for a period of six months. The Court then held that a portion of the relevant regulation, 38 C.F.R. § 3.558(c)(2) (1991), added an additional requirement (over and above the six-month competency) that a veteran also have a proper dependent before a lump sum could be disbursed to the veteran. The regulation was held to be inconsistent with the authorizing statute and, as such, in excess of the Secretary's authority. *Felton*, 4 Vet.App. at 370. In *Felton*, as in *Stillwell*, there was no precedent that a duly promulgated regulation was inconsistent with the authorizing statute.

In arriving at our conclusion through this analysis, we have not carried the argument for the Secretary. Unlike this Court's opinion in *Cook*, 6 Vet.App. at 237, which involved an express concession by the Secretary on the issue of substantial justification in general, here, the Secretary argued that VA's position has always been substantially justified, and the Court has merely put that argument to the test in the above analysis. Admittedly, the focus of the Secretary's response to

the EAJA application could have been different, and the Secretary could have presented a more thorough argument for his position. Nevertheless, we do not limit our examination of the matter to a vacuum surrounded by only the four corners of the pleadings and the underlying opinion by the Court.

Indeed, our underlying decision on the merits addressed an altogether different question: whether the regulation at issue was valid rather than whether the steps that led to VA's promulgation of the regulation (i.e., the prelitigation conduct) was substantially justified. Although our decision on the merits discussed the legislative history of the pertinent *statute,* at no time did we examine the history of the *regulation.* Only now, in the context of whether VA's position was substantially justified, has the issue been squarely presented for consideration.

Finally, we note that the instant case is distinguishable from cases that would seem to be to the contrary, such as *Oregon Natural Resources Council v. Madigan,* 980 F.2d 1330 (9th Cir.1992). In *Oregon Natural Resources Council,* the agency had failed to promulgate regulations which it had been *required* to issue. *Id.,* 980 F.2d at 1332. In the instant matter, VA did not fail to promulgate mandatory regulations. On the contrary, as discussed above, VA attempted to fill in the blanks a statute left open on the specific issue. Moreover, while other cases may serve as guiding lights, ultimately, each case must find its own path upon the stormy EAJA seas.

What we have done is carefully craft an approach that avoids per se rules at either extreme while ensuring that we evaluate the matter to determine, as the Supreme Court stated in *Underwood,* 487 U.S. at 565, 108 S.Ct. at 2550, whether the Government's position is "justified to a degree that could satisfy a reasonable person." As this Court stated in *Stillwell,* 6 Vet.App. at 302, we must evaluate the Government's position "based upon the totality of the circumstances." Our dissenting colleague clearly does not agree with our position and his dissenting opinion speaks for itself. We have not constructed an almost insurmountable barrier in the way of awarding attorney fees

under the EAJA. Nor have we swung the pendulum in the opposite direction by holding that the Government's position can never be substantially justified where a regulation is contrary to statute. As discussed above, the regulation that we invalidated in the underlying decision on the merits was the product of a long and, ultimately, misguided effort to address questions that were left unanswered by the underlying statute. We have attempted to avoid deciding the case in a vacuum that would preclude us from making a meaningful evaluation of the totality of the circumstances regarding this particular case. Finally, we have gone to great lengths to make clear that the resolution of EAJA issues depends on many factors.

In this case, the totality of the circumstances, as described above, supports the conclusion that the Secretary's position during the administrative and judicial phases of this case was substantially justified. Thus, we hold that the Secretary's position was substantially justified, and we deny the appellant's application under the EAJA for attorney fees and expenses.

### b. *"Common Benefit" Theory of Recovery*

■ The appellant also argues that the litigation on the merits created a common benefit in which a class of persons will share. The appellant's theory of recovery is, however, inapplicable to this Court.

■ The "common" (or "substantial") benefit theory is an exception to the American Rule that each party pays its own attorney fees. *See generally Johnson,* 939 F.2d 586. However, the common or substantial benefit doctrine is available under the EAJA only under 28 U.S.C. § 2412(b). *See Linquist v. Bowen,* 839 F.2d 1321, 1323 (8th Cir.1988), *cert. denied,* 488 U.S. 908, 109 S.Ct. 259, 102 L.Ed.2d 247 (1988); *Baker v. Bowen,* 839 F.2d 1075, 1080 (5th Cir.1988); *Petition of Hill,* 775 F.2d 1037, 1041 (9th Cir.1985); *Grace v. Burger,* 763 F.2d 457, 459 (D.C.Cir.1985), *cert. denied,* 474 U.S. 1026, 106 S.Ct. 583, 88 L.Ed.2d 565 (1985); *McQuiston v. Marsh,* 707 F.2d 1082, 1085 (Fed.Cir.1983); *see also Hyatt v. Shalala,* 6 F.3d 250, 253–54 (4th Cir.1993).

In *Cook,* 6 Vet.App. at 236–35, the Court held that the FCAA made only subsection (d) of 28 U.S.C. § 2412 applicable to this Court. As the Supreme Court stated in *Ardestani v. INS,* 502 U.S. 129, 137–39, 112 S.Ct. 515, 521, 116 L.Ed.2d 496 (1991), the EAJA is a "partial waiver of sovereign immunity. Any such waiver must be strictly construed in favor of the United States." As the Federal Circuit stated in a recent decision, "Once Congress has waived sovereign immunity over certain subject matter, we cannot 'assume the authority to narrow the waiver that Congress intended.'" *Jones,* 41 F.3d at 636 (quoting *United States v. Kubrick,* 444 U.S. 111, 117–18, 100 S.Ct. 352, 356–57, 62 L.Ed.2d 259 (1979)). However, whereas section 506 of the FCAA is an unequivocal waiver of sovereign immunity with respect to subsection (d) of the EAJA, it does not constitute a waiver of sovereign immunity with respect to subsection (b) of the EAJA. Therefore, subsection (b)—and the common benefit theory—do not apply to this Court.

## III. CONCLUSION

Accordingly, the Court denies the appellant's application under the EAJA for attorney fees and expenses. Since we deny the applications under the EAJA, we do not address the other issues raised by the parties in their pleadings.

STEINBERG, Judge, concurring in part and dissenting in part:

I regret that I am unable to join in most of the well-written and scholarly opinion of the Court. I do concur in part II.B.2.b., regarding the inapplicability to the Court of subsection (b) of 28 U.S.C. § 2412. *See Cook v. Brown,* 6 Vet.App. 226, 233–36 (1994), *appeal docketed,* No. 94–7073 (Fed.Cir.1994).

## I. SUMMARY

However, for several reasons, I respectfully dissent with respect to the Equal Access to Justice (EAJA) application submitted un-

der 28 U.S.C. § 2412(d). First and foremost, despite its emphatic protestations to the contrary and its attempt to evoke the appearance of a balanced case-by-case approach, *ante* at 280–81, 286, analysis of the underlying Court opinion suggests that the majority is headed toward a rule that no EAJA award is permissible whenever the Court's holding on the law in the underlying merits decision was a matter of first impression for this Court.[1] As I will attempt to show below, there is much precedent to the contrary, some of which the Court acknowledges, but the significance of which it then proceeds to ignore.

Second, I dissent because I believe that the Secretary's position in the underlying merits case as well as in the litigation before this Court was not substantially justified; most particularly, the government has not even remotely carried its burden of showing that it was substantially justified in adopting the regulation struck down in the underlying opinion as "an unauthorized limitation on the scope of 38 U.S.C.[ ] § 5503". *Felton v. Brown,* 4 Vet.App. 363, 371 (1993). The majority attempts to carry the burden for the Department of Veterans Affairs (VA), and does so valiantly, but that is not this Court's proper function in deciding applications for attorney fees under the EAJA.

## II. ANALYSIS

In order for the government to prevail in defending against an EAJA application, it must show that its position was substantially justified in both the underlying action at the agency level and in its litigating posture when its administrative action was challenged in court. *See* 28 U.S.C. § 2412(d)(1)(B), (2)(D); *Stillwell v. Brown,* 6 Vet.App. 291 (1994), *appeal docketed,* No. 94–7090 (Fed.Cir. June 20, 1994); *Cook,* 6 Vet. App. at 237; *Community Heating & Plumbing Co. v. Garrett,* 2 F.3d 1143, 1145 (Fed. Cir.1993); *Gavette v. OPM,* 808 F.2d 1456, 1467 (Fed.Cir.1986) (en banc). Here, VA has shown neither.

---

1. No such rule was established in this Court's opinion in *Stillwell v. Brown,* 6 Vet.App. 291 (1994), *appeal docketed,* No. 94–7090 (Fed.Cir. June 20, 1994). There, the Court stated only that it *"may* also have a bearing upon the reasonable-

ness of the litigation position of the VA … that some cases before this Court are ones of first impression involving good faith arguments of the government that are eventually rejected by the Court." *Id.* at 303 (emphasis added).

## A. Government's Position in Departmental Proceedings

The government's position in the VA administrative proceedings has two parts: First, VA's action in adopting the invalidated regulation, 38 C.F.R. § 3.558(c)(2) (1993); and, second, VA's adjudicative actions in denying the claim for the lump-sum payment of withheld compensation benefits. As to the latter, absent an arbitrary or bad-faith decision by the Board of Veterans' Appeals (Board), which did not occur here, a Board misapplication of the law would not be unreasonable if carried out, as it was here pursuant to a duly-prescribed VA regulation, because the law provides that "the Board shall be bound in its decisions by the regulations of the Department", 38 U.S.C. § 7104(c).

However, the Department has put forth absolutely no defense of its actions in adopting the regulation.[2] Rather, the majority, in an extensive analysis, which was not included in the underlying merits opinion here, of the legislative and regulatory history of the invalidated regulation, seeks to provide that defense on the Secretary's behalf. As this Court observed in *MacWhorter v. Derwinski*, 2 Vet.App. 133, 135–36 (1992): "We think it fair to observe that the function of any federal court does not include comprehensive record analysis and research for the government's side of a case.... [I]t is unthinkable that the Court fill the role of the Secretary while resolving the appeals before it."[3] In *Cook*, the Court held that the Secretary's concession of the applicant's allegation that "the Secretary's position ... was [not] 'substantially justified', either in the administrative adjudication process ... or in the litiga-

tion of the appeal here", was dispositive of those questions in that case. *Cook*, 6 Vet. App. at 237. Because VA has not contested in this case the lack of substantial justification for its administrative action in adopting the regulation, the Secretary has implicitly conceded it and this implicit concession should be similarly dispositive.

In any event, assuming that the Secretary's implicit concession is not dispositive, on the merits of the question whether the Secretary's promulgation of the offending regulation had "a reasonable basis in law and fact"[4] I would find much guidance in the Seventh Circuit's action in sustaining an EAJA-fee award by the Chief Judge of the Northern District of Illinois,[5] who had rejected the Secretary of HHS' defense of the Department's *pre*litigation issuance of Social Security Act regulations which the Supreme Court had invalidated as "manifestly contrary to the statute" and in excess of the Secretary's statutory authority. *Marcus v. Shalala*, 17 F.3d 1033, 1038 (7th Cir.1994). The Seventh Circuit first noted that the district court's finding, which was not reversed, that the HHS *litigation* position was substantially justified because of "uncertainty in the law arising from conflicting authority or the novelty of the question [which] weighs in the government's favor when analyzing the reasonableness of the government's litigation position". *Id.* at 1037. However, the court of appeals affirmed the district court's holding that those same factors did not provide substantial justification for the HHS *pre*litigation adoption of the regulations (even though those regulations had been upheld by

---

**2.** The Secretary's argument in Part III of his January 19, 1994, Response to the EAJA application relates only to the Secretary's positions during the adjudication process in the Department and the litigation in this Court.

**3.** In a subsequent opinion, the Court granted reconsideration of the cited opinion but did not withdraw the opinion and amended it only "by deleting that portion which [had] awarded appellant benefits." *MacWhorter v. Derwinski*, 2 Vet. App. 655, 657 (1992).

**4.** *Chiu v. United States*, 948 F.2d 711, 715 (Fed. Cir.1991) (trial court must examine entirety of government's conduct and make "judgment call

whether the government's overall position has a reasonable basis in both law and fact"); *Stillwell*, 6 Vet.App. at 302 (government position is "substantially (i.e., for the most part) justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact") (quoting *Pierce v. Underwood*, 487 U.S. 552, 566 n. 2, 108 S.Ct. 2541, 2550 n. 2, 101 L.Ed.2d 490 (1988)). *See also Marcus v. Shalala*, 17 F.3d 1033, 1038 (7th Cir.1994) ("[b]ased on this authority, a reasonable person could agree with the district court that the government's position was not substantially justified").

**5.** *Marcus v. Sullivan*, 793 F.Supp. 812 (N.D.Ill. 1992).

at least two circuits against the same attack that had ultimately prevailed in the Supreme Court) in view of "the strong disapproval of the ... regulations among the [six] circuit courts" whose positions refuted "the Secretary's contention that the questions involved were close ones." *Id.* at 1038.[6]

So, in *Marcus,* the Seventh Circuit affirmed a district court finding of a lack of substantial justification in the government's having adopted the invalidated Social Security regulations, because "the questions involved were [not] close ones", *ibid,* despite the fact that there was a split of authority among the circuits on the invalidity of the regulations and even though the position of the government was held to be reasonable in litigating the issue in court. The majority is wide of the mark when it attempts to distinguish *Marcus* by asserting that "there was no chorus of circuit courts of appeals expressing 'strong disapproval' of the regulation adopted by VA prior to the litigation" in our case. *Ante* at 282. The significance of *Marcus,* as I have attempted to point out, is that even though at least two circuits had sustained the regulation the Seventh Circuit nonetheless concluded that the questions involved in determining the validity of the regulation were not even "close ones". This is quite a different matter from determining the reasonableness of the government's *litigating* posture in the face of a split of authority among the circuits.

Furthermore, although it is certainly true that a decision adverse to the government on the merits does not automatically lead to a finding of no substantial justification, a court must carefully heed the evaluation of the government's position set forth in the underlying merits decision. It is well established that the substantial-justification inquiry should not lead to a retrying of the merits of the case. *See, e.g., Pierce v. Underwood,* 487 U.S. 552, 563, 108 S.Ct. 2541, 2549, 101 L.Ed.2d 490 (1988) ("a 'request for attorney's fees should not result in a second major litigation' ") (citing *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983)). Therefore, courts should *in the main* look to the underlying decision

to provide the basis for determining the reasonableness of the government's position. As the Third Circuit stated: "[I]t is essentially the relevant portions of the record in the underlying action which must be examined". *Brinker v. Guiffrida,* 798 F.2d 661, 664 (3rd Cir.1986). In *Devine v. National Treasury Employees Union,* 805 F.2d 384, 386 (Fed.Cir.1986), the Federal Circuit relied substantially on the position taken by the "merits panel of [the underlying] case" in reaching a decision that the government's position was not substantially justified. *See also Cabot Corp. v. United States,* 788 F.2d 1539, 1539 (Fed.Cir.1986) (relying, in awarding EAJA fees, on merits opinion which held that government position was "beyond the pale of reasonableness"). In the instant case, the majority, rather than relying on the opinion and record in the underlying action, has presented its own justification for the Secretary's promulgation of the regulation. As the analysis in part II.B.2., below, illustrates, the majority has, in effect, turned its back on the analysis in the Court's own opinion invalidating the regulation.

**B. *Government's Position in Litigation***

*1. Federal Precedent:* As noted earlier, there is much precedent in federal caselaw for the proposition that the mere fact that an agency is litigating a matter of first impression does not establish that its position in doing so is substantially justified. *In Devine v. Sutermeister,* 733 F.2d 892, 895 (Fed.Cir. 1984), the Federal Circuit concluded: "In some contexts, the novelty or importance of the issues presented may validate, for purposes of substantial justification, an otherwise marginal appeal by the government. . . . In this case, however, the novelty of the government's position cannot compensate for the paucity of support in favor of that position." *Accord L.G. Lefler, Inc. v. United States,* 801 F.2d 387, 388 (Fed.Cir.1986) (awarding EAJA fees despite government argument that "case presented a legal issue of first impression"). Similarly, in *Ramon–Sepulveda v. INS,* 863 F.2d 1458, 1459 (9th Cir.1988), the Ninth Circuit stated that "[a] lack of judicial precedent adverse to the government's position does not preclude a fee

**6.** *But see Marcus v. Shalala,* 17 F.3d at 1040    (dissenting opinion).

award under the EAJA." And in *Keasler v. United States*, 766 F.2d 1227, 1234 (8th Cir. 1985), the Eighth Circuit stated: "That a case presents an issue of first impression in the forum does not ipso facto make the government's position in the litigation reasonable." *See also Federal Election Comm'n v. Political Contributions Data, Inc.*, 995 F.2d 383, 387 (2d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1064, 127 L.Ed.2d 384 (1994) ("It would be hard to imagine how it could be held that one had been 'substantially justified' in defying the will of Congress"); *Curry v. Block*, 608 F.Supp. 1407, 1415 (S.D.Ga. 1985) (Court stated in holding Government's litigation position not substantially justified: "[N]ovelty of the ... issue did not entitle the Government to advocate an alternative, and unreasonable, interpretation of the statute").

Particularly appropriate to this case is the district court's admonition[7] in *Preston v. Heckler*, 596 F.Supp. 1158, 1160 (D.Alaska 1984):

> While the fact that the government litigates a position for the first time may be relevant to a determination of its justification, there is nothing in the EAJA or the appellate decisions cited to suggest that an agency's position is substantially justified until tested in a court of law or because its position goes years without challenge.

To the same effect was the district court in *Hope v. United States*, 1988 WL 47819, at *2, 1988 U.S.Dist.LEXIS 4194, at *3–4 (E.D.La. May 12, 1988):

> If a "novel" interpretation is not credible, a substantial justification finding is not warranted.... In this case, the government

persisted in its actions throughout the trial and appellate courts notwithstanding that the Temporary Regulations were plainly inconsistent with the underlying statutes and legislative intent. It is true that this [i]s a case of first impression; however, the government's interpretation was not credible.

In the same vein, as the majority points out, *ante* at 280–81, there is also much precedent for the proposition that the fact that an executive agency regulation or policy has been in effect for many years and has not been previously challenged does not demonstrate that the agency's position was substantially justified. *See, e.g., Andrew v. Bowen*, 837 F.2d 875, 879 (9th Cir.1988); *Edwards v. Griepentrog*, 783 F.Supp. 522, 525 (D.Nev. 1991). This proposition seems particularly applicable to the invalidation of a VA regulation by this Court in view of the Federal Circuit's admonition that the fact that "[m]any VA regulations have aged nicely simply because Congress took so long to provide for judicial review.... counsels for vigorous review" of, not deference to, "VA's long-standing regulations". *Gardner v. Brown*, 5 F.3d 1456, 1463–64 (Fed.Cir.1993), *aff'd,* —— U.S. ——, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994).[8]

**2. Underlying Court Opinion:** In the instant case, the Court's underlying merits opinion concluded that the regulation was invalid because it violated the plain meaning of the statute. The Court quoted *Gardner v. Derwinski*, 1 Vet.App. 584, 587–88 (1991), *aff'd sub nom. Gardner v. Brown*, 5 F.3d 1456 (Fed.Cir.1993), *aff'd,* —— U.S. ——, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994), to the

---

**7.** It is important to note that U.S. district court opinions provide a very good source of EAJA law on substantial justification, because that issue is reviewed on appeal under an abuse-of-discretion standard, *see Marcus v. Shalala*, 17 F.3d 1033, 1037 (7th Cir.1994); *Trahan v. Brady*, 907 F.2d 1215, 1217 (D.C.Cir.1990), and this Court is here acting in the same context as are the district courts as to EAJA applications. *See also Marcus, supra* note 3.

**8.** The Supreme Court echoed this proposition by stating:

> [E]ven if this were a close case, where consistent application and age can enhance the force of administrative interpretation, the Government's position would suffer from the further

factual embarrassment that Congress established no judicial review for VA decisions until 1988, only then removing the VA from what one congressional Report spoke of as the agency's "splendid isolation." As the Court of Appeals for the Federal Circuit aptly stated, "[m]any VA regulations have aged nicely simply because Congress took so long to provide for judicial review. The length of such regulations' unscrutinized and unscrutinizable existence" could not alone, therefore, enhance any claim to deference.

*Brown v. Gardner,* —— U.S. ——, ——, 115 S.Ct. 552, 557, 130 L.Ed.2d 462 (1994) (citations omitted).

effect that where "'a statute's language is *plain*, and its meaning *clear*, no room exists for construction. There is nothing to construe.' The language of the statute, taken in context, *mandates* payment to the veteran". *Felton*, 4 Vet.App. at 369 (emphasis added) (citation omitted). The Court looked at legislative history only briefly and then only to conclude that it "reinforces our interpretation of the *plain* meaning of the legislative language." *Ibid.* (emphasis added).

The Court characterized the Secretary's position as asking the Court to "interpret subparagraph (B) in a vacuum, without reference to its overall context", and rejected that approach, concluding as follows "from reading the text of paragraph (1) as a whole": "[S]ubparagraph (B) *mandates* payment of those suspended payments in a lump sum", *ibid.* (emphasis added); "Congress ... *clearly* wanted payment of the benefits to be suspended, not terminated, during institutionalization; thus, if the veteran regained competency and was no longer institutionalized, the veteran could then enjoy those benefits which had been temporarily suspended", *id.* at 369–70 (emphasis added); "[i]t is *clear* that it is contrary to the language and purpose of the statute to deny the veteran his lump-sum compensation", *id.* at 370 (emphasis added); and the "restriction [imposed by the regulation] is *clearly* in contravention of the statute, and.... is an unauthorized limitation on the scope of 38 U.S.C.[ ] § 5503", *id.* at 371 (emphasis added).

In reaching its conclusion that the regulation was invalid, the Court found the regulation "'contrary to *clear* Congressional intent'". *Id.* at 370 (emphasis added) (quoting *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43 n.

9, 104 S.Ct. 2778, 2781 n. 9, 81 L.Ed.2d 694 (1984)).

Having made this bed, the majority now decides to lie elsewhere. Faced with the apparently unattractive task of having to award EAJA fees unless it can make the case which the Secretary has notably failed to make [9] (and which the Court itself did not even remotely suggest in the underlying merits opinion which the majority now chooses largely to ignore [10]), the majority has, in effect, rewritten the underlying opinion. In the process, the majority has also rewritten the rules of logical analysis by its apparent conclusion that the regulatory history, that it now goes to such lengths to depict, has no bearing on the question of whether the regulation was authorized by the pertinent statute. *Ante* at 286. Yet the entire thrust of that remarkable post-facto regulatory-history rationalization would seem to be that there were indeed gaps in the statute which it was reasonable for the Secretary to try to fill through interpretation and then regulation.

Indeed, so taken is the majority with its adopted role as surrogate Secretary that it now finds that the statutory scheme left "blanks" "open" and "questions ... unanswered", *ante* at 286–87, whereas the Court had unanimously concluded in the underlying opinion that the plain meaning of the very same statutory scheme left "nothing to construe" and "mandates payment to [the] veteran", thus requiring invalidation as "contrary to clear Congressional intent" of the regulation which denied that very payment. In the words of my esteemed colleague in the majority, "presto, we are left with [an] incredible result". *Sarmiento v. Brown*, 7 Vet.App. 80, 87 (1994) (Kramer, J., concurring).

One could perhaps reasonably surmise that the reason why the so-called regulatory his-

9. In a' masterful piece of understatement, the majority itself concedes that the Secretary's "focus ... could have been different, and the Secretary could have presented a more thorough argument for his position". *Ante* at 286.

10. This approach is perhaps most clearly evident in the following statement of the majority: "There is no spoken basis in the underlying decision on the merits ... to refute the reasonableness of the Secretary's position in this case." *Ante* at 282. Not only does this statement con-

tradict binding precedent by removing the burden of proving substantial justification from the Secretary (*see Stillwell*, 6 Vet.App. at 301 (citing *Cook v. Brown*, 6 Vet.App. 226, 237 (1994), and binding Federal Circuit precedent for the proposition that "the government has the burden of proving that its position was substantially justified")), but it places that burden on the Court "to refute" what the majority apparently believes, quite mistakenly, is a presumption of "reasonableness" that the Secretary's position is to be afforded under the law.

tory analysis was not included in the Court's underlying opinion was that it is fundamentally at odds with the analysis of the Court in that opinion, not that it was not relevant to the question then before the Court.

As the foregoing discussion and quoted excerpts illustrate, the Court in the underlying opinion did not find that the statutory question involved was a complicated, complex, or close one or that the statutory provisions were confusing or in need of substantial interpretation. It is in those circumstances that the government's advocacy of a rejected position on a novel question of law should be held to be substantially justified. For example, in *Stillwell* the Court denied EAJA fees after stressing that the statutory and regulatory framework that was involved presented "a 'confusing tapestry' in which the meaning is not easily discerned". *Stillwell,* 6 Vet.App. at 303 (citation omitted). *Accord Gregory v. Brown,* 7 Vet.App. 127, 128–29 (1994) (denying EAJA fees in the case on which the underlying *Stillwell* decision was based in terms of its legal conclusion as to the invalidity of a regulation); *Pottgieser v. Kizer,* 906 F.2d 1319, 1324 (9th Cir.1990) (no EAJA fees where Secretary's interpretation of "complex" Social Security statute was reasonable); *cf. Oregon Natural Resources Council v. Madigan,* 980 F.2d 1330, 1332 (9th Cir.1992) (awarding EAJA fees where "analysis was neither complex nor extraordinary" in the underlying merits case that had held that a particular statute required issuance of regulations).[11]

In my view, when this Court holds that an agency's interpretation of the law violates the **clear** and **plain** meaning of the statute, the Secretary, who has the burden of demonstrating substantial justification, has a heavy burden to carry to persuade the Court that both his adoption of the regulation and his litigating posture were reasonable as a matter of law. *See Stillwell, supra.* Again, I am not contending that EAJA fees should automatically be available in such a case or that it would not be possible for the Secretary to carry his heavy burden of persuasion. My position is that I am not persuaded that the Secretary has carried that burden here, given the plain meaning and clarity of the statutory provision in question, as stressed repeatedly by the Court in its underlying opinion. Given the Court's analysis of the regulation in the underlying opinion in *Felton, supra,* if this Court is not adopting a per se case-of-first-impression exception,[12] one is left to wonder in what circumstances the majority would ever award EAJA fees when a regulation is invalidated in the underlying case.

**3. Court's Discretion:** Finally, it must be remembered that we are acting on this EAJA application as the trial court, "in an area described as quintessentially discretionary in nature," *Chiu v. United States,* 948 F.2d 711, 715 n. 4 (Fed.Cir.1991); *Stillwell,* 6 Vet.App. at 302. In exercising that discretion, we must be mindful of the purpose of Congress in 1992 in enacting legislation to extend the EAJA to appeals in this Court after the Court had specifically held that the Act did not apply. *Jones v. Derwinski,* 2 Vet.App. 231, 233–35 (1992) (en banc) (consolidated with *Karnas v. Derwinski,* No. 90–312) [hereinafter *Jones and Karnas I* ]. At that time, both Judiciary Committees explained that their intent was to apply to veterans the objective of the EAJA in order "to eliminate financial deterrents to individuals attempting to defend themselves against unjustified Government action" and noted that the Court's holding in *Jones and Karnas I, supra* (that the EAJA was not applicable to appeals to this Court) that Congress was "overruling" had "resulted in a substantial burden on veterans bringing cases to

---

11. The majority takes pains to distinguish *Madigan, ante* at 286. I have cited *Madigan* preceded by a *"cf."* and done so only for its quotation to the effect that, because neither complex nor extraordinary analysis was needed to conclude that the government's interpretation of the statute was wrong, the government's position was not substantially justified.

12. What, for example, is the majority suggesting if not a case-of-first-impression exception when it

says, as previously quoted in part in note 8, *supra:* "In the case at bar, however, there is no spoken basis in the underlying decision on the merits or in our jurisprudence in general to refute the reasonableness of the Secretary's position in this case. This Court was the first Court to rule on the merits on the validity of the regulations...." *Ante* at 282.

[this] court ... [where] a majority of cases are being brought pro se" and where "[v]eterans are exactly the type of individuals the statute [EAJA] was intended to help". *Cook,* 6 Vet.App. at 235 (quoting Committee reports). The kind of case-of-first-impression-litigation exemption that the Court appears to be granting the government here would be inconsistent with that Congressional purpose since cases in which this Court strikes down a Department regulation as violative of the plain meaning of the statute are quite rare [13] and are exactly the type of cases that EAJA was designed to encourage claimants to litigate. It seems particularly ironic—and basically inequitable—that the Court will award EAJA fees to an appellant who wins a remand because of a BVA decision's failure to comply with the Court's prior opinion in *Gilbert v. Derwinski,* 1 Vet.App. 49, 59 (1990), requiring an adequate statement of reasons or bases under 38 U.S.C. § 7104(d)(1), a result which benefits only one VA claimant,[14] whereas an appellant, such as the one before us, who succeeds in an appeal that invalidates a VA regulation that may affect thousands of claims per year is denied those fees.[15]

Moreover, affording the government one free bite at the apple is not consistent with Justice O'Connor's quotation from *Hudson* in the majority opinion, *ante* at 278, nor in line with the Federal Circuit's call in *Gardner, supra,* for "vigorous review" of VA regulations, whether of long standing or not.

In exercising our discretion in determining the reasonableness of the litigation position of the government here, we should bear in mind that we are not deciding whether, under all the circumstances, the government should have taken the litigating position it did. That is a decision for the government to make. There may be many reasons why the government might choose to defend what

turns out to be indefensible or to "take a long shot" litigating position. We would do well to heed the exceptional opinion of now Chief Judge Edwards of the U.S. Court of Appeals for the District of Columbia Circuit in *Spencer v. NLRB,* which stated after an exhaustive analysis of the substantially-justified criterion:

> [T]here is no good reason to suppose that fee-shifting under these circumstances will deter the *government* from [a particular litigating position]. If the issue is important enough, government officials, who of course are not personally liable for the payment of fees, should not be dissuaded by the prospect of an award of fees to a private party's counsel.

*Spencer v. NLRB,* 712 F.2d 539, 559 (D.C.Cir.1983). What we must remember is that the EAJA was designed to help provide a level playing field by removing disincentives to private parties who would challenge government action [16]—not to deter the government from defending itself in court against such challenges. *See id.* at 549–50.

## III. CONCLUSION

The recent *Oregon Natural Resources Council, supra,* opinion is highly instructive. There, the Ninth Circuit reversed as an ***abuse of discretion*** a district court denial of EAJA fees in a case in which the Secretary of the Interior had failed to issue certain regulations which the court had previously held were mandatory and not, as the United States had contended in its litigation position, discretionary. In awarding EAJA fees, the Ninth Circuit held as follows:

> [W]e find that the underlying position of the government was not substantially justified. We come to this conclusion not because the government lost its claim, but because ***a previous panel of this court***

---

**13.** *See, e.g., Gregory v. Brown,* 5 Vet.App. 108 (1993); *Felton v. Brown,* 4 Vet.App. 363 (1993); *Jensen v. Brown,* 4 Vet.App. 304 (1993); *Cole v. Derwinski,* 2 Vet.App. 400 (1992); *Gardner v. Derwinski,* 1 Vet.App. 584 (1991), *aff'd sub nom. Gardner v. Brown,* 5 F.3d 1456 (Fed.Cir.1993), *aff'd,* — U.S. —, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994).

**14.** *See Elcyzyn v. Brown,* 7 Vet.App. 170, 176–77 (1994).

**15.** *Accord Stillwell, supra; Gregory v. Brown,* 7 Vet.App. 127 (1994) (denying EAJA fees).

**16.** See *Jones (McArthur) v. Brown,* 41 F.3d 634, 636 n. 1 (Fed.Cir.1994) (consolidated with *Karnas v. Brown,* No. 94–7057).

294

*determined that the statutory language and legislative history were clear.*

. . . .

*It is not our task to review the previous panel's decision.* The previous panel remanded when the government asked to be heard on the attorney's fee issue. Unfortunately, the government only reasserts its position on the merits, and supplies nothing new to justify its position and meet its burden.

. . . .

We realize that in a case involving purely legal issues, where precedent is lacking, it may be difficult for the government to present extraneous circumstances going beyond the merits to justify its litigation position. Nevertheless, the government has the burden of showing that its decision to proceed to trial on the H[ells] C[anyon] N[ational] R[ecreation] A[rea] Act claim was reasonable. *It lost on an issue of statutory interpretation that the previous panel did not consider close, and, without evidence otherwise explaining its position, we cannot say that its position was substantially justified. We thus conclude that the government's underlying conduct—failure to issue the specified regulations—and its litigation position—that the relevant language was discretionary—were not reasonable.*

*Oregon Natural Resources Council,* 980 F.2d at 1332 (emphasis added). These analyses and conclusions are fully applicable to the instant case, in my view.

Accordingly, for all of the above reasons, I would grant the EAJA application, and, therefore, am constrained to dissent from the Court's denial of the application under 28 U.S.C. § 2412(d).[17]

**17.** It should be noted that EAJA fees awarded where the attorney was paid by fee agreement, as here, go first to reimburse the appellant for the amount paid to the attorney pursuant to any fee

agreement. Federal Courts Administration Act, Pub.L. No. 102–572, § 506, 106 Stat. 4506, 4513 (1992).