BARTLEY, Judge,
with whom LANCE, PIETSCH, and MOORMAN, Judges, join, dissenting:
I agree with Judge Lance that the Government’s position was substantially justified and therefore join his dissent to the extent that he would hold that EAJA fees be denied in this case. I write separately, however, to point out that the appropriate analysis for substantial justification asks whether, considering the totality of the circumstances, the Agency’s litigation and agency-level positions were reasonable at the time they were taken. Although the majority gives lip service to the totality of the circumstances, in substance the majority focuses on only one factor, the Federal Circuit’s merits determination in Johnson v. McDonald (Johnson II), 762 F.3d 1362 (Fed.Cir.2014), and impermissibly bases its reasonableness determination on hindsight judgment. The majority’s troubling fixation on the merits determination in Johnson II, rather than inquiring whether the Secretary’s positions at both the administrative and litigation phases of Mr. Butts’s case were such that a reasonable person could think them correct at the time they were taken, represents the application of an erroneous legal test. As described below, I would deny EAJA fees and hold that the Secretary has met his burden of establishing substantial justification in (1) his administrative position of applying 38 C.F.R. § 3.321(b)(1) to allow for extrasche-dular consideration of individual disabilities, following a lengthy litigation on a novel legal argument and this Court’s en banc ruling in the Secretary’s favor on that argument, and (2) his litigation position of agreeing to a prompt remand.
I. APPLICABLE LAW
A. Principles of Substantial Justification under EAJA
“[T]he substantial justification inquiry requires an analysis of the ‘totality of the circumstances’ surrounding the government’s adoption of a particular position.” Patrick v. Shinseki, 668 F.3d 1325, 1332 (Fed.Cir.2011) (quoting Smith v. Principi, 343 F.3d 1358, 1362 (Fed.Cir.2003)); see Roanoke River Basin Ass’n v. Hudson, 991 F.2d 132, 139 (4th Cir.1993); Secretary’s Response (Resp.) to EAJA Application at 10-11. “The standard to be applied ... for the issue of substantial justification is one of reasonableness....” Essex Electro Eng’rs, Inc. v. United States, 757 F.2d 247, 252 (Fed.Cir.1985); see Cline v. Shinseki, 26 Vet.App. 325, 326 (2013) (This “inquiry is designed to evaluate the reasonableness of ‘the position taken by the government on the issue on which the claimant prevailed.’ ” (quoting Smith, 343 F.3d at 1363)). “The totality of the circumstances, by its very description, does not exclude any valid issue from consideration.” White v. Nicholson, 412 F.3d 1314, 1317 (Fed.Cir.2005). “[A] position can be justified even though it is not correct, and ... it can be substantially (i.e., for the most part) justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact.” Pierce v. Underwood, 487 U.S. 552, 566 n. 2, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). “Put another way, substantially justified means there is a dispute over which reasonable minds could differ.” Norris v. S.E.C., 695 F.3d 1261, 1265 (Fed.Cir.2012). “Substantially justified” does not mean “justified to a high degree,” but rather means “ ‘justified in substance or in the main’—that is, *93 justified to a degree that could satisfy a reasonable person.” Underwood, 487 U.S. at 565, 108 S.Ct. 2541.
Courts do not bother asking whether correct Government positions were substantially justified. See, e.g., Patrick, 668 F.3d at 1330 (substantial justification involves asking whether the Government “adopted a reasonable, albeit incorrect, interpretation of a particular statute or regulation”). Therefore, it should be obvious that “[t]he Secretary’s failure to prevail on the merits of the case does not raise a presumption that his position was not substantially justified.” Bates v. Nicholson, 20 Vet.App. 185, 191 (2006); see Pottgieser v. Kizer, 906 F.2d 1319, 1324 (9th Cir.1990) (“Failure to prevail does not raise a presumption that the government’s position was unreasonable.”); United States v. Yoffe, 775 F.2d 447, 450 (1st Cir.1985) (“Since fees are awarded only to a prevailing party, it follows that the fact that the government lost does not create a presumption that its position was not substantially justified.”); see also Morgan v. Perry, 142 F.3d 670, 685 (3d Cir.1998) (“The EAJA is not a ‘loser pays’ statute.”). The Supreme Court has stated that “the fact that one court agreed or disagreed with the Government does not establish whether or not its position is substantially justified.” Underwood, 487 U.S. at 565, 108 S.Ct. 2541.
Moreover, no matter how strongly worded a court opinion invalidating a Government position on the merits may be, a subsequent court reviewing an EAJA application as to that position may not simply cite the merits opinion as proof that the position was not substantially justified, but must itself conduct an independent analysis to determine whether the government’s position, at the time that position was taken, was “justified to a degree that could satisfy a reasonable person.” Id.; see Gonzales v. Free Speech Coal., 408 F.3d 613, 620 (9th Cir.2005) (reversing district court’s EAJA award that relied on the “clarity of the” Supreme Court’s merits determination because, “[t]o be sure, the Supreme Court soundly rejected the government’s arguments. But ... [b]y putting undue weight on the Supreme Court’s holding on the merits, the district court seemed to rely on hindsight, rather than an assessment of the reasonableness of the government’s position at the time of the litigation.” (emphasis in original)); Taucher v. Brown-Hruska, 396 F.3d 1168, 1173 (D.C.Cir.2005) (“In considering substantial justification under EAJA, ... as in other areas[,] courts need to guard against being subtly influenced by the familiar shortcomings of hindsight judgment.”); see also Taucher, 396 F.3d at 1174 (“Courts evaluating substantial justification must instead analyze why the government’s position failed in court .... ” (emphasis in original)). Accordingly, unlike prevailing-party status, which simply asks whether the Government lost, substantial justification asks a more nuanced question: even though the Government lost, at the time it made the decision under appeal, was it reasonable in the attempt? See Roanoke River Basin Ass’n, 991 F.2d at 139 (“The focus when determining whether a petitioner is a prevailing party is aimed at the degree of success obtained by the petitioner. Whether the government’s ‘position in the litigation’ is substantially justified, in contrast, focuses, not the on the government’s success or failure, but on the reasonableness of its position in bringing about or continuing the litigation.”).
Against this backdrop, this Court has identified several important factors to consider in the totality of the circumstances, “including merits, conduct, reasons given, and consistency with judicial precedent and VA policy with respect to such position, and action or failure to act, as re- *94 fleeted in the record on appeal.” Stillwell v. Brown, 6 Vet.App. 291, 302 (1994); see also Cline, 26 Vet.App. at 327-32 (discussing and applying the Stillwell factors). The Court in Stillwell further recognized:
Two special circumstances may also have a bearing upon the reasonableness of the litigation position of ... VA, and of the action or inaction by ... VA at the administrative level. One is the evolution of VA benefits law since the creation of this Court that has often resulted in new, different, or more stringent requirements for adjudication. The second is that some cases before this Court are ones of first impression involving good[-]faith arguments of the government that are eventually rejected by the Court.
6 Vet.App. at 303. The Court also noted that the Board’s decision may issue at a time when “the statutory and regulatory framework presents a ‘confusing tapestry,’ ... in which the meaning is not easily discerned.” Id.; see Meinhold v. U.S. Dep't of Def., 123 F.3d 1275, 1278 (9th Cir.1997) (“Consequently it is not fair to conclude that every violation of a regulation by an agency stamps its position as unreasonable. The government may avoid EAJA fees if it can prove that the regulation it violated was ambiguous, complex, or required exceptional analysis.”). To determine whether the Secretary is substantially justified, the Court must “consider the applicable Stillwell factors, as well as any other circumstances that may apply.” Cline, 26 Vet.App. at 327.
The Federal Circuit has held that “[wjhether or not the position adopted by the government comports with then-existing precedent on a particular issue is an undeniably important factor.” Patrick, 668 F.3d at 1332. Moreover, “substantial justification is measured, not against the case law existing at the time the EAJA motion is decided, but rather, against the case law that was prevailing at the time the government adopted its position.” Bowey v. West, 218 F.3d 1373, 1377 (Fed.Cir.2000); see Owen v. United States, 861 F.2d 1273, 1275 (Fed.Cir.1988) (en banc) (finding that “the position of the government was substantially justified when it was taken, based on precedents then standing”); (Leamon) Johnson v. Principi, 17 Vet.App. 436, 442 (2004) (“As to VA’s application of the revised regulation in the instant case, the Court cannot find that the Secretary’s position at the administrative level was not substantially justified because ‘the Board clearly relied upon then-current law.’ ” (citation omitted)); see also Gonzales, 408 F.3d at 620 (EAJA requires an assessment of the “reasonableness of the government’s position at the time of the [Government action in question]” (emphasis in original)).
Although no single issue is dispositive, courts are more likely to find that the Government’s position was substantially justified where that position was invalidated in a case of first impression. See White, 412 F.3d at 1316-17 (affirming this Court’s finding of substantial justification where case invalidating regulation that Board had relied on in adjudicating EAJA applicant’s case was “a case of first impression and [there had been] no prior adverse reaction” to the regulation); Ozer v. Principi, 16 Vet.App. 475, 479 (2002) (finding the Secretary’s position substantially justified where, inter alia, the “case was one of first impression” and “there was no prior disapproval of or challenge to the [Secretary’s interpretation]”); Felton v. Brown, 7 Vet.App. 276, 283 (1994) (finding the Secretary’s position in a case of first impression substantially justified “[g]iven the statutoi’y silence on the particular matter and the lack of a conflict with adverse precedent”); see also Cody v. Caterisano, 631 F.3d 136, 142 (4th Cir.2011) *95 (“As the Government notes, litigating cases of first impression is generally justifiable.”).
This is not to suggest that the lack of previous challenge to an erroneous Government position -will always render the Government immune from EAJA fees; rather, “whether a case is one of first impression is only one factor for the Court to consider.” Felton, 7 Vet.App. at 283. This factor furthers the commonsense principle that “[f|or purposes of the EAJA, the more clearly established are the governing norms, and the more clearly they dictate the result in favor of the private litigant, the less ‘justified’ it is for the government to pursue or persist in litigation.” Martinez v. Sec’y of Health & Human Servs., 815 F.2d 1381, 1383 (10th Cir.1987) (citation omitted). Thus, the cases construing EAJA recognize a balance between encouraging the vindication of rights by “creating a limited exception to the ‘American Rule’ against awarding attorneys fees to prevailing parties,” Underwood, 487 U.S. at 575, 108 S.Ct. 2541 (Brennan, J., concurring in part and concurring in the judgment), and not discouraging government agencies from attempting to safeguard taxpayer money by choosing to litigate positions they reasonably believe are correct at the time, see Roanoke River Basin Ass’n, 991 F.2d at 139 (“While the EAJA redresses governmental abuse, it was never intended to chill the government’s right to litigate or to subject the public fisc to added risk of loss when the government chooses to litigate reasonably substantiated positions, whether or not the position later turns out to be wrong.”).
Also important to the case at hand, as Judge Lance identified, are the Court’s decisions in Ramsey v. Nicholson, 20 Vet.App. 16 (2006), and Ribaudo v. Nicholson, 20 Vet.App. 552 (2007) (en banc). In Ramsey, the Court emphasized that its “decisions are ‘binding as of the date the decision is issued and are to be considered and, when applicable, are to be followed by VA agencies of original jurisdiction, the Board, ... and the Secretary in adjudicating and resolving claims.’ ” 20 Vet.App. at 38 (quoting Tobler v. Derwinski, 2 Vet.App. 8, 14 (1991)). Similarly, in Ribrndo, the Court held that allowing the Board to ignore a decision of this Court while an appeal to the Federal Circuit was pending “would be to allow an executive agency to nullify the effect of a judicial decision.” 20 Vet.App. at 560. The Board thus is bound by a decision of this Court even while an appeal is pending, absent a motion to stay a class of cases pending the result of that appeal, and the Board must follow the Court’s decision “unless or until overturned by this Court en banc, the United States Court of Appeals for the Federal Circuit, or the Supreme Court.” Tobler, 2 Vet.App. at 14.
B. The Secretary’s Arguments and the Totality of the Circumstances
The Secretary advanced several reasons why his conduct was substantially justified at both the administrative and litigation phases of Mr. Butts’s case. See Secretary’s Resp. at 9-13 (arguing, inter alia, that he relied on “then current law” at the agency stage, that the issue of collective extraschedular evaluations “present[ed] issues of first impression before this Court” and involved “good faith arguments,” that at the litigation stage his conduct was reasonable because he acted promptly to agree to a remand in light of the Federal Circuit’s decision in Johnson II and thereby “cooperated in speedily resolving the litigation,” that “this case involves an evolution of VA benefits law ‘that has often resulted in new, different, or more stringent requirements for adjudication,’ ” and that, under the “totality of the circum *96 stances,” his conduct was reasonable, (citing Essex, 757 F.2d at 253; Stillwell, 6 Vet.App. at 303)). At oral argument, contrary to the majority’s contention, he did not suggest any limitation to the arguments the Court should consider. See ante at 81-82. Rather, he added to those arguments, stating that this Court’s decision in Johnson v. Shinseki (Johnson I), 26 Vet.App. 237 (2013) (en banc), was an “authoritative statement that was binding on VA” at the time of the Butts Board decision, and that “there was no reason for the Board to cite Johnson because Mr. Butts did not argue below that [the evaluations for] his various service connected disabilities were inadequate on a collective basis.”[11] Oral Argument at 25:40-42, 26:03-15, Butts v. McDonald, U.S. Vet.App. No. 14-3019(E) (argued Sept. 22, 2015), https://www.uscourts.cavc.gov/oral_ arguments_audio.php; see also id. at 27:47-53, 28:17-32, 32:38-50 (further discussing the binding nature of the Court’s Johnson I decision on the Board in Mr. Butts’s case).
Further, because we must analyze the totality of the circumstances, not just some of the circumstances, we are not limited to those factors specifically identified by counsel. See Cline, 26 Vet.App. at 327 (Court must consider the Stillwell factors, “as well as any other circumstances that may apply”); Felton, 7 Vet.App. at 286 (“[W]e do not limit our examination of [substantial justification] to a vacuum surrounded by only the four corners of the pleadings and the underlying opinion by the Court.... [T]he Secretary argued that VA’s position has always been substantially justified, and the Court has merely put that argument to the test.”); see also Patrick, 668 F.3d at 1332 (“We have repeatedly made clear that the substantial justification inquiry requires an analysis of the ‘totality of the circumstances’ surrounding the government’s adoption of a particular position.”); White, 412 F.3d at 1317 (substantial justification analysis “does not exclude any valid issue from consideration”).
II. ANALYSIS
A. Litigation Phase: Case of First Impression Prompts Timely Remand
I agree with the majority that substantial justification must be measured at both the administrative and litigation phases of Mr. Butts’s case. See Locher v. Brown, 9 Vet.App. 535, 537 (1996). Looking at the totality of the circumstances, including but not limited to the circumstances specifically identified by counsel, there are strong arguments for finding substantial justification at both phases here, which the majority either ignores or misses in its unfortunate fixation on the Johnson II merits decision. Although in Johnson II the Federal Circuit ultimately invalidated the Secretary’s interpretation of § 3.321(b)(1), necessitating remand in this case, that action was taken in a “case of first impression,” see White, 412 F.3d at 1316-17; (Leamon) Johnson, 17 Vet.App. at 442; and, once the Secretary’s interpretation was invalidated, the Agency did not “drag its feet” but acted promptly to remand Mr. Butts’s appeal and thereby “cooperated in speedily resolving the litigation,” Essex, 757 F.2d at 253; Stillwell, 6 Vet.App. at 302. Both are *97 factors weighing in favor of substantial justification in this case.
In both White and (Leamon) Johnson, the Board in the underlying appeals relied on then-current regulation 38 C.F.R. § 19.9(a)(2), but in the subsequently decided Disabled American Veterans (DAV) v. Secretary of Veterans Affairs, 327 F.3d 1339 (Fed.Cir.2003), a “case of first impression,” the Federal Circuit found that regulation inconsistent with 38 U.S.C. § 7104(a) and invalidated it. See White, 412 F.3d at 1315. Both cases were remanded after DAV was decided, and in the EAJA phases of both White and (Leamon) Johnson, the Federal Circuit and this Court, respectively, held that the Secretary’s actions were substantially justified, under “the totality of the circumstances,” because “DAV v. Sec’y was a case of first impression and there had been no prior adverse reaction to” the now-invalidated regulation. (Leamon) Johnson, 17 Vet.App. at 442; see also White, 412 F.3d at 1316-17. Similarly, here the Board decision on Mr. Butts’s claim took place at a time when the Secretary’s interpretation, though erroneous, had been upheld by this Court, and, once Johnson II invalidated that interpretation in a case of first impression, the Secretary acted promptly to secure remand.
The entirety of the Government’s conduct at the litigation phase of this case consisted of realizing that remand of the Board decision was required and working with Mr. Butts to have the case promptly remanded. See Dkt. No. 14-3019, Joint motion for partial remand (Mar. 9, 2015) (6 months following September 2014 Notice of Appeal); see also (Leamon) Johnson, 17 Vet.App. at 442 (“Because the only litigation position taken by the Secretary before this Court was a timely request for remand, the Court holds that the Secretary acted reasonably and was substantially justified at the litigation stage_”); Pierre v. West, 12 Vet.App. 92, 97 (1998) (litigation position was reasonable where Government sought remand within 17 months following date of regulatory amendment, which included delays to obtain counsel for appellant, seven extensions of time by appellant, and two extensions of time by Government, and including a 4-month Government delay following appellant’s initial brief). Mr. Butts implicitly concedes that the only phase at which substantial justification can be contested is the administrative phase. See Appellant’s Reply to Secretary’s Resp. at 8 (“The Secretary argues that his position at the administrative level and his litigation position were both substantially justified.The Court should find that his position at the administrative level was not substantially justified under the totality of the circumstances.” (emphasis in original)); Secretary’s Resp. at 12 (“Appellant cites to no action by the Secretary in the proceedings before this Court that was not reasonable.”). Thus, although the majority reserves ruling on the issue, the Government has clearly met its burden with respect to substantial justification at the litigation phase. See Locher, 9 Vet.App. at 537.
B. Administrative Phase

1. Whether the Position Was Reasonable at the Time the Position Was Taken

Accordingly, the only matter in dispute is whether the Government has met its burden to show substantial justification at the administrative phase. Id. In this regard, it is important to consider the context in which the Board’s decision was issued and to impute to the Board the knowledge of only those things that had already happened, not those things that were yet to come. See Smith v. Principi, 16 Vet.App. 71, 77 (2002) (“[Wjhen viewing the Board’s decision in this case, the only *98 issue is whether it is reasonable to find that the Board’s decision, at the time it was made, had a reasonable basis in law and fact” because “our concern is ‘not what the law now is, but what the government was substantially justified in believing it to have been.’ ” (quoting Underwood, 487 U.S. at 561, 108 S.Ct. 2541)); see also Bowey, 218 F.3d at 1377. In Smith, the Board issued a February 6, 2001, decision that addressed the Veterans Claims Assistance Act of 2000 (VCAA), although not as thoroughly as it should have, as determined by a February 22, 2001, decision of this Court, Holliday v. Principi, 14 Vet.App. 280, 284 (2001) (holding that all provisions of the VCAA are potentially applicable to claims pending on the date of enactment). 16 Vet.App. at 72-73. Holliday prompted the Secretary to agree to a joint motion for remand, as Johnson II prompted the Secretary in the present case. Id. at 76. In Smith, this Court denied EAJA fees on a finding that the Board’s position at the administrative phase had been substantially justified because, even though the text of the statute remained unchanged from 2000 to the time of the Board’s decision, and although the Board had misapplied the statute, “[a]t the time of the Board’s February 6, 2001, decision, the Court had not yet addressed the full scope and effect of the VCAA.” Id. at 75. Specifically, this Court observed that it would be fundamentally unfair, in determining whether to make the Government pay the appellant’s legal fees and expenses, to impute knowledge to the Board that it did not have at the time of its decision. See id. at 76 (“There was no way for the Board to have known on February 6, with any reasonable certainty, that on February 22, the Court would interpret the VCAA as holding all provisions of the act potentially applicable to all pending claims.”). Accordingly, no matter how persuasive we now find the Federal Circuit’s August 6, 2014, interpretation of § 3.321(b)(1), we may not presume that the Board, on July 31, 2014, could have predicted that outcome with “any reasonable certainty.” Id.; see also Yoffe, 775 F.2d at 450 (in denying EAJA fees, court did “not think that the government should be found to have acted without substantial justification because it did not foresee how the court of appeals would interpret the regulations”).

2. Secretary’s Longstanding Interpretation of His Regulation

What the Board may be presumed to know is what happened prior to July 31, 2014, which includes the Johnson I litigation phase. In Johnson I, where the Secretary interpreted § 3.321(b)(1) in the same way as the Board in the present appeal interpreted it, the Secretary argued that the language in the regulation referring to “schedular evaluations” and “disability or disabilities” was ambiguous, and could refer to either a combined extrasche-dular evaluation, as Mr. Johnson contended, or “a recognition that a veteran may receive extraschedular ratings for one or more individual disabilities,” as the Government contended. Johnson I, 26 Vet.App. at 243; see Stillwell, 6 Vet.App. at 302 (analyzing “reasons given” for Government’s erroneous position). The reasons given for the Secretary’s position also included that the Secretary was interpreting his own regulation, and that that interpretation was entitled to a high degree of deference. Johnson I, 26 Vet.App. at 243 (citing, inter alia, Auer v. Robbins, 519 U.S. 452, 461-62, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997)).
Although the majority dismisses the deference due to an agency’s interpretation of its own regulation as irrelevant because deference is due only if the regulation is ambiguous, ante at 86, and here, the Federal Circuit ultimately determined *99 that the regulation was not ambiguous, the majority has it backwards, impermissi-bly substituting a retrospective analysis for what must be a prospective one. The question for substantial justification purposes is whether the Secretary’s “chopee] to litigate” was reasonable at the time the choice was made, Roanoke River Basin Ass’n, 991 F.2d at 139; see Smith, 16 Vet.App. at 77, not whether it is reasonable in hindsight, Gonzales, 408 F.3d at 620. This inquiry “depends upon all the pertinent facts of the case.” Essex, 757 F.2d at 252. In hindsight, because the Federal Circuit determined that the regulation’s plain meaning was against the Secretary’s interpretation, that interpretation would have met the same result whether § 3.321(b)(1) was a statute or a regulation. However, thinking about substantial justification prospectively, as EAJA requires, the fact that the Government was interpreting its own regulation, and not a statute, has a direct bearing on how reasonable its choice to litigate was. Interpreting the language of his own regulation, the Secretary would know that his interpretation would be accepted unless that interpretation were contrary to the regulation’s plain meaning. See Thun v. Shinseki, 572 F.3d 1366, 1369 (Fed.Cir.2009); see also Decker v. N.W. Envtl. Def. Ctr., 568 U.S. 597, 133 S.Ct. 1326, 1337, 185 L.Ed.2d 447 (2013) (“It is well established that an agency’s interpretation need not be the only possible reading of a regulation—or even the best one—to prevail. When an agency interprets its own regulation, the Court, as a general rule, defers to it ‘unless that interpretation is “plainly erroneous or inconsistent with the regulation.” ’ ” (citation omitted) (quoting Auer, 519 U.S. at 461, 117 S.Ct. 905)); Martin v. Occupational Safety and Health Review Comm’n, 499 U.S. 144, 151, 111 S.Ct. 1171, 113 L.Ed.2d 117 (1991). However, if he were interpreting a statute, he would know that, even if his interpretation were not contrary to the statute’s plain meaning, and the Court agreed with him that the statute was ambiguous, he would still have to demonstrate the overall persuasiveness of his position. See Wanless v. Shinseki, 618 F.3d 1333, 1338 (Fed.Cir.2010) (Secretary’s interpretation of statutory language is entitled to deference “only in so far as it has the ‘power to persuade’ ” (quoting Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944))).
Accordingly, the Secretary was on stronger footing proposing an interpretation of his own regulation than he would have been if he were proposing the same interpretation of a statute. See Decker, 133 S.Ct. at 1337; Skidmore, 323 U.S. at 140, 65 S.Ct. 161; Saysana v. Gillen, 614 F.3d 1, 4 (1st Cir.2010) (holding the Government’s choice to litigate “the question of whether [a provision] was ambiguous, and therefore whether courts had to defer to a reasonable administrative interpretation of [that provision]” was itself reasonable). This principle has real consequences for the reasonableness of the administrative action in the present case. Again, thinking prospectively, in deciding whether or not to issue decisions consistent with Johnson I, the Secretary would know that it would be more difficult for the Federal Circuit to reverse Johnson I because it involved his interpretation of his own regulation than it would be to reverse his interpretation of a statute: to reject the Secretary’s view of his own regulation, the Federal Circuit would have to find that the language plainly was against the Secretary’s reading, whereas to reject the Secretary’s view of a statute, it would simply have to find that his interpretation, even for an ambiguous statute, was unpersuasive. See Skidmore, *100 323 U.S. at 140, 65 S.Ct. 161; Thun, 572 F.3d at 1369.[12]

3. Consistency with Regulatory Scheme

The reasons given also included that the Secretary, rather than proposing his interpretation for the first time in litigation, had long construed the regulation to mean that a veteran was entitled to extrasche-dular consideration on a disability-by-disability basis and had recorded that construction in his Adjudication Procedures Manual Johnson I, 26 Vet.App. at 243-44 (citing VA Adjudication Procedures Manual (M21-1MR), pt. III, subpt. iv, ch. 6, sec. B.5.c (claims are to be submitted for extraschedular consideration “if the schedular evaluations are considered inadequate for an individual disability”)). See Stillwell, 6 Vet.App. at 302 (identifying “consistency with ... VA policy with respect to such position” as factor weighing in favor of substantial justification); cf. Salmi v. Sec’y of HHS, 712 F.Supp. 566, 569-70 (W.D.Mich.1989) (no substantial justification where Secretary “fail[edj to apply his own long-standing de minimus construction of the severity requirement” (emphasis in original)). The reasons given included the Secretary’s argument that this Court in Thun v. Peake cited with approval the M21-1MR provision stating that claims be submitted for extraschedu-lar consideration if the rating schedule is inadequate “for an individual disability” and that the Court noted that the analysis must begin with “a comparison between the level of severity and symptomatology of the claimant’s service-connected disability with the established criteria found in the rating schedule for that disability.” Johnson I, No. 10-1785, Appellee’s Memorandum of Law at 10, 12 (Jun. 15, 2012) (quoting Thun v. Peake, 22 Vet.App. 111, 115 (2008)). The Secretary argued, moreover, that the Federal Circuit, in affirming this Court’s Thun decision, deferred to VA’s interpretation of § 3.321(b)(1) as set forth in the M21-1MR. Id. at 15 (quoting Thun v. Shinseki, 572 F.3d 1366, 1369 (Fed.Cir.2009)).
The reasons given further included practical considerations, to wit, the fact that the VA rating schedule assigns disability evaluations based on the impact of individual disabilities, not collective disabilities; and, thus, “it is unworkable for VA to compare a Veteran’s disabilities collectively to the criteria of an individual disability in the rating schedule to determine whether the rating schedule is adequate and extraschedular consideration is warranted.” Id. at 10. Additionally, practical considerations included that § 3.321(b)(3) states that effective dates for extraschedu-lar evaluations will be determined in accordance with 38 C.F.R. § 3.400, and § 3.400 describes how to determine an effective date for an individual claim only, not collective claims. Id. at 6. Moreover, the Secretary represented, and this Court has no cause to doubt, that “a sampling of Board decisions demonstrates that the Board generally follows VA’s long-standing interpretation” of the regulation to require individualized extraschedular consideration. Id. at 8; see Fed. Express Corp. *101 v. Holowecki, 552 U.S. 389, 399-400, 128 S.Ct. 1147, 170 L.Ed.2d 10 (2008) (judicial deference was due to the Equal Employment Opportunity Commission’s (EEOC’s) “interpretive statement, embodied in the compliance manual and memoranda, [which] has been binding on EEOC staff for at least five years” even though, “as the Government concedes, the agency’s implementation of this policy has been uneven”).[13]
4. This Court Upholds the Secretary’s Approach
Five out of eight judges on this Court deemed the Secretary’s interpretation reasonable. See Johnson I, 26 Vet.App. at 244 (noting, inter alia, that the Secretary was interpreting his own regulation and that “the VA disability rating schedule is designed to consider the disabling effect of disabilities separately”). Although the majority points out that this Court’s agreement with the Secretary’s interpretation does not “resolve the substantial justification inquiry,” ante at 82 (citing Patrick, 668 F.3d at 1332), that fact is both obvious and a red herring. Of course this Court’s merits determination does not “resolve” the question of whether the Government was substantially justified; however, neither does the Federal Circuit’s merits determination. Neither court adjudicated the issue of whether the Government’s position was substantially justified, and neither court was asked. See Felton, 7 Vet.App. at 286 (“Indeed, our underlying decision on the merits addressed an altogether different question: whether the regulation at issue was valid rather than whether the steps that led to VA’s promulgation of the regulation (i.e., the prelitigation conduct) was substantially justified.”); see also Toro Co. v. White Consol. Indus., Inc., 383 F.3d 1326, 1335 (Fed.Cir.2004) (only “issues that were actually decided, ... in the earlier litigation” represent the law of the case); Grantham v. Brown, 114 F.3d 1156, 1158 (Fed.Cir.1997) (“It is axiomatic that the language in [any case] must be read in light of the facts and issues that were before the court when the language was written.”); Young v. Shinseki, 25 Vet.App. 201, 204 (2012) (en banc) (issue preclusion requires that (1) the issues previously adjudicated were “identical to” those before the current tribunal; (2) the issues were “actually litigated” in the prior proceeding; (3) the prior tribunal’s resolution of those issues was “necessary to the resulting judgment”; and (4) the litigant was fully represented in the prior proceeding).
Nor would it resolve the reasonableness inquiry if the Supreme Court unanimously reversed the Federal Circuit’s merits determination tomorrow. The Supreme Court binds the Federal Circuit as to merits determinations actually reached, just as the Federal Circuit binds this Court, see Toro, 383 F.3d at 1335; however, that hierarchy of authority does not mean that disagreements with merits determinations are unreasonable. As Justice Jackson explained:
Whenever decisions of one court are reviewed by another, a percentage of them are reversed. That reflects a difference in outlook normally found between personnel comprising different courts. How *102 ever, reversal by a higher court is not proof that justice is thereby better done. There is no doubt that if there were a super-Supreme Court, a substantial portion of our reversals of state courts would also be reversed. We are not final because we are infallible, but we are infallible only because we are final.
Brown v. Allen, 344 U.S. 443, 540, 73 S.Ct. 397, 97 L.Ed. 469 (1953) (Jackson, J., concurring). Nor does it mean that failure to foresee a different result on appeal is unreasonable. See Rivers v. Roadway Exp., Inc., 511 U.S. 298, 312, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994) (“The essence of judicial decisionmaking—applying general rules to particular situations—necessarily involves some peril to individual expectations because it is often difficult to predict the precise application of a general rule until it has been distilled in the crucible of litigation.”).
However, the fact that this Court agreed with the Secretary’s interpretation of § 3.321(b)(1), and thus that the Board’s conduct in Mr. Butts’s case comported, quite perfectly, with then-existing precedent, is an “undeniably important factor,” Patrick, 668 F.3d at 1332, which weighs in favor of substantial justification in this case. It also shows that the case presented “a dispute over which reasonable minds could differ.” Norris, 695 F.3d at 1265; League of Women Voters of California v. F.C.C., 798 F.2d 1255, 1260 (9th Cir.1986) (denying EAJA fees because, inter alia, “[t]he constitutionality of the amended statute is a question upon which reasonable minds could differ, as evidenced by the five-four division by the Supreme Court”); see also Gonzales, 408 F.3d at 621 (noting differing views of Government’s position taken by judges at previous phases and concluding, “[tjhus, ‘reasonable minds’ could and did differ about” the Government’s position). Moreover, the en banc approval of the Secretary’s position by this Court, unique amongst courts as the only court established to hear exclusively appeals from the Board of Veterans’ Appeals, is arguably a stronger factor in the Secretary’s favor than judicial approval generally. See 38 U.S.C. § 7252(a) (giving this Court exclusive jurisdiction over appeals from the Board); Shinseki v. Sanders, 556 U.S. 396, 129 S.Ct. 1696, 1707, 173 L.Ed.2d 532 (2009) (noting this Court’s exclusive jurisdiction over veterans benefits cases and its special expertise in veterans benefits law); Tobler, 2 Vet.App. at 11-12 (“Congress has made the United States Court of Veterans Appeals the national ‘statutory court of review5 of decisions on veterans’ benefits by the Secretary and the Department of Veterans Affairs.” (citation omitted)); cf. Underwood, 487 U.S. at 569, 108 S.Ct. 2541 (exploring aspects of court approval or disapproval that may bear on weight to be given to either, including that “a string a losses can be indicative; and even more so a string of successes”).
5. Whether the Only Reasonable Response to Johnson I Was To Seek a Stay
On the central question in today’s proceedings of whether the agency’s administrative position was substantially justified on July 31, 2014, the Agency had all the above information supportive of a decision to continue applying its longstanding interpretation of § 3.321(b)(1), and the Agency did not have the benefit of the Federal Circuit’s Johnson II decision. See Smith, 16 Vet.App. at 76. Additionally, even if, as the majority contends, “the majority [in Johnson I ] simply erred when it deferred to the Secretary’s interpretation,” see ante at 82, Johnson I was “the law of the jurisdiction” at the time of the Board’s July 2014 decision in the present case. Tobler, 2 Vet.App. at 11; see Ribaudo, 20 Vet.App. at 560; Ramsey, 20 Vet.App. at *103 38. Put simply, measured “against the case law that was prevailing at the time the government adopted its position,” the Board’s position was correct. Bowey, 218 F.3d at 1377. Although the Secretary could have sought a stay pending the Federal Circuit’s resolution of the Johnson appeal, it is not clear why a reasonable Secretary would have done so in light of this Court’s approval of his interpretation. Cf. Ribaudo v. Nicholson, 21 Vet.App. 137, 142 (2007) (noting that “a decision of this Court may invalidate the procedures used by the Secretary in a manner that would require a serious restructuring of the VA workforce” and granting the Secretary’s motion to stay in part to avoid “the likely creation of administrative disruption in an already generally overburdened system”); Tobler, 2 Vet.App. at 12 (“‘[W]e do not expect the Board or any other litigant to rejoice in all the opinions of this Court. When it disagrees in a particular case ... it would be reasonable for the Board to stay its proceedings.’” (emphasis added) (quoting Ithaca Coll. v. NLRB, 623 F.2d 224, 228 (2d Cir.1980))).
Moreover, EAJA does not require the most correct, forward-thinking, prescient agency action possible. See Underwood, 487 U.S. at 565, 108 S.Ct. 2541 (holding that “substantially justified” does not mean “justified to a high degree”). It requires only that the Government’s action was such that “a reasonable person could think it correct.” Id. Accordingly, even if I can imagine a reasonable Secretary who would have thought it prudent, following a Court’s confirming what he already thought about his own regulation, to seek a stay of all Board decisions involving that regulation, furthering the wait time for all veterans whose appeals involving that regulation were then pending, see Ramsey, 20 Vet.App. at 38 (“Such a stay does not affect solely the Secretary’s own internal matters.... For all cases stayed at the Board pending a decision by the Federal Circuit in the controlling case, the stay denies or delays the implementation of the Court’s controlling decision.”), it does not matter. For I can certainly imagine a reasonable Secretary who would have chosen not to seek such a stay, and this is all that EAJA requires. See Underwood, 487 U.S. at 565, 108 S.Ct. 2541; see also Cody, 631 F.3d at 144 (noting that in some cases opposing legal positions may both be reasonable).
Otherwise stated, given the above backdrop for the Government’s administrative position, I find it legally untenable to hold, as the majority does, that, after the Agency had expended significant time, energy, and resources to advance a litigation position on an interpretation of the Agency’s own long-standing regulation, after it had secured an en banc victory on that position in the Court whose congressionally mandated purpose is to adjudicate disputes involving that Agency, and after that Court had admonished that Agency that its holdings bind the Board and that stays may be appropriate where the Government disagrees with a holding but must be sought by motion to the Court, the only reasonable action for the Agency to take would have been to move for a stay. Needless to say, given the factors identified above, I disagree with the majority’s assessment that the Secretary has “one factor weighing in favor of finding substantial justification at the administrative stage.” Ante at 87.
C. The Majority’s Analysis
1. The Majority’s Focus on the Johnson II Merits Decision
As for factors weighing against substantial justification, the majority gives lip service to the totality of the circumstances test but in reality cedes its analytic responsibility to the Federal Circuit’s merits *104 determination in Johnson II. That merits determination was that the Secretary’s interpretation was contrary to the regulation’s language and public policy. 762 F.3d at 1366. Although the majority cites separate “factors” that favor its negative substantial justification determination, see ante at 87, all of these factors are variations on the majority’s theme that the Johnson II merits determination shows in hindsight that Mr. Butts’s Board decision was not substantially justified. Cf. Gonzales, 408 F.3d at 620 (impermissible to rely on hindsight “rather than an assessment of the reasonableness of the government’s position at the time [that position was taken]”); Taucher, 396 F.3d at 1173 (same). Two of those factors are the merits decision’s plain language conclusion and that decision’s policy observation.[14] See Johnson II, 762 F.3d at 1366.
One of the factors, that Johnson I was not unanimous but was a “mixed decision,” ante at 87, is only relevant to the extent that the majority believes that the Government should have sought a stay. This factor is intertwined with one of the remaining “factors,” which is that the Government “had the option” of staying the case. Id. As stated above, however, the fact that this Court’s decision was five votes to three in the government’s favor showed, at the time of Mr. Butts’s Board decision, that (1) this Court, sitting en banc, agreed with the Secretary’s analysis and (2) the case presented an issue on which reasonable minds could differ. See Gonzales, 408 F.3d at 620 (Ninth Circuit split decision was among factors showing that “ ‘reasonable minds could differ’ over the credibility of this novel argument”); League of Women Voters, 798 F.2d at 1260 (five to four vote in the Supreme Court showed that the issue was one on which reasonable minds could differ). Moreover, the fact that the Government “had the option” of staying the case, as explained above, is immaterial to the question of whether the only reasonable option the Secretary had was to stay the case.

2. The Majority’s Statutory Interpretation

Although not listed among its numeric “factors,” the majority obliquely refers to an issue not briefed by any party in this case, the language of 38 U.S.C. § 1155—the statute that, along with 38 U.S.C. § 501(a), provides the enabling authority for 38 C.F.R. § 3.321. The majority points out that the Federal Circuit observed that the language of § 3.321(b)(1) is “consistent with the language of [section] 1155.” Johnson II, 762 F.3d at 1365. Additionally, the majority reasons that section 1155 “permit[s] extraschedular evaluations based on a veteran’s combined injuries” and “is not silent” on the issue of collective versus individual extraschedular evaluations. Ante at 84. Further, the majority concludes that these facts make this case *105 distinguishable from Felton, citing Fel-ton’s language indicating that the Secretary’s mistake in enacting a regulation was more reasonable “[g]iven the statutory silence on the particular matter.” Id. (citing Felton, 7 Vet.App. at 284). The majority’s vague implication that the Secretary’s interpretation of § 3.321(b)(1) is inconsistent with, unreasonable in light of, or implicated in any way by section 1155 is misguided.
Section 1155 does not require any type of extraschedular evaluation, let alone require an extraschedular evaluation based on the collective impact of disabilities. The statute requires, in the most general of terms, that the Government “adopt and apply a schedule of ratings of reductions in earning capacity from specific injuries or combination of injuries.” 38 U.S.C. § 1155 (emphasis added). This the Secretary has done, by creating a rating schedule for evaluating individual disabilities and by choosing to provide a combined ratings table. See 38 C.F.R. § 4.25(b) (2015) (“Except as otherwise provided in this schedule, the disabilities arising from a single disease entity .., are to be rated separately as are all other disabling conditions, if any. All disabilities are then to be combined as described in paragraph (a) of this section.”). As the Federal Circuit noted, § 3.321(b)(1) fulfills a “gap-filling” function, “to accord justice” for veterans whose schedular ratings—the ones contemplated by section 1155—are, in the Secretary’s determination, inadequate. Johnson II, 762 F.3d at 1365. Section 1155 does not mention extraschedular consideration or contemplate it, but rather speaks to what is required for ratings under the schedule; extraschedular ratings are, by definition, outside the schedule. More directly applicable to § 3.321(b)(1) is section 501(a), which gives the Secretary “the authority to prescribe all rules and regulations which are necessary or appropriate to carry out the laws administered by the Department and are consistent with those laws.”
That the Federal Circuit found Mr. Johnson’s interpretation of that “gap-filling” regulation to be “consistent with” section 1155 is a far cry from holding that the Secretary’s interpretation of the regulation was unreasonable. Even if the Federal Circuit’s aside regarding section 1155 could be taken as a wholehearted endorsement of Mr. Johnson’s reading of the statute as “reasonable” within the meaning of EAJA—that is, “justified to a degree that could satisfy a reasonable person,” Underwood, 487 U.S. at 565, 108 S.Ct. 2541—it does not follow that the Secretary’s alternate interpretation was not also “justified to a degree that could satisfy a reasonable person,” id. To hold otherwise would be to place an almost insurmountable burden on the Government: not only would it be required to show that its own position was reasonable, it would also be required to show that its opponent’s position was unreasonable, even though its opponent prevailed. Such reasoning not only grossly overstates the Government’s burden in the EAJA context, but it also overlooks the fact that, in many cases, both parties’ arguments may be reasonable, particularly where both parties are grappling with difficult issues of first impression. See Cody, 631 F.3d at 144 (“[B]oth the [EAJA] order and the record reflect that the district court considered the arguments of both parties to be reasonable. We agree. In this case of first impression, the Government made reasonable arguments based on statutory interpretation and analogous cases.”). Invoking section 1155 does not save the majority’s hindsight-based analysis about the Secretary’s interpretation of his regulation from being a hindsight-based analysis.

*106
3. Using the Plain Language Canon To Deem a Position Unreasonable

While mindful that the exercise of determining substantial justification has been described as “a judgment call” that is “quintessentially discretionary in nature,” Chiu v. United States, 948 F.2d 711, 715 and n. 4 (Fed.Cir.1991), the majority ironically makes the one error that will damn any substantial justification analysis: to focus on one factor, such as the merits determination, without considering all the pertinent factors surrounding the Government’s conduct. See Patrick, 668 F.3d at 1332 (“Here, although the Veterans Court acknowledged this ‘totality of the circumstances’ standard, it improperly focused on only one factor—the fact that the court itself had previously upheld the VA’s erroneous interpretation.... ”); Essex, 757 F.2d at 253 (rejecting prevailing party’s argument that the Government is per se not substantially justified where it acts in contravention of a regulation because “[t]he reasonableness of the government’s litigation position is determined by the totality of the circumstances, and we eschew any single-factor approach”); Felton, 7 Vet.App. at 286 (“[W]e have gone to great lengths to make clear that the resolution of EAJA issues depends on many factors.”); Stillwell, 6 Vet.App. at 302 (identifying the “merits” as one factor out of many for consideration).
The majority states that the fact that the Federal Circuit held that the Secretary’s reading in Johnson “contradicted the plain language of the regulation” weighs “heavily against a finding of substantial justification” and makes it “difficult to establish substantial justification.” Ante at 83 (citing Patrick, 668 F.3d at 1331). First, as a matter of logic and common sense, it does not follow that, merely because the language of a regulation is held to be “plain,” the analysis used to arrive at that result is plain, or straightforward, or the only reasonable result that the court could have reached, or that parties who failed to foresee that result were “plainly” wrong. Plain language, otherwise stated as language unadorned by other methods of determining meaning, is nothing more or less than a canon of statutory and regulatory construction and is not a trump card in the substantial justification analysis. See Wash. Legal Found. v. U.S. Sentencing Comm’n, 17 F.3d 1446, 1449-50 (D.C.Cir.1994) (“‘Plain meaning* analysis is merely a tool of construction; it does not perform a talismanic function in statutory interpretation.”); see also Watt v. Alaska, 451 U.S. 259, 266, 101 S.Ct. 1673, 68 L.Ed.2d 80 (1981) (“[T]he plain-meaning rule is ‘rather an axiom of experience than a rule of law, and does not preclude consideration of persuasive evidence if it exists.’ ” (quoting Boston Sand Co. v. United States, 278 U.S. 41, 48, 49 S.Ct. 52, 73 L.Ed. 170 (1928))). Our colleagues in the majority surely must realize that reasonable minds can and do differ on whether the meaning of a regulation can be divined from its plain meaning, just as they can differ on any other legal question.
The proof that a court’s plain language conclusion does not trump other factors is in the pudding. This Court and others have held numerous times and without difficulty that, even though the Government’s interpretation was rejected by a court using the plain language canon, that position was substantially justified because the plain language question was close, or because the law in question was complex, or because the case presented an issue of first impression, or, as in this case, because a combination of those factors was present. See White, 412 F.3d at 1316 (Secretary’s position was substantially justified even where Board applied a regulation found to be “facially invalid on the basis of contradicting the overarching legislation” because the case was “a case of *107 first impression” where there had been “no prior adverse reaction” to the regulation); Bates, 20 Vet.App. at 192 (although Federal Circuit held that Secretary’s interpretation of 38 U.S.C. § 511(a) was contrary to statute’s “plain language” and had “no basis in the statutory language, legislative history, or case authority,”[15] Secretary’s position was substantially justified because the issue was “a matter of first impression” and the Federal Circuit’s analysis “could not have been easily divined from existing caselaw”); Ozer, 16 Vet.App. at 478 (Secretary’s enactment of regulation that “contravened the plain language of the statute and was thus invalid” was substantially justified where the Secretary’s conduct represented “a good faith effort to interpret an evolving area of the law,” did not conflict with then-existing precedent, and “was not questioned” until proceedings before the Court in Felton, when it was invalidated (quoting Felton, 7 Vet.App. at 285)); see also Saysana, 614 F.3d at 6 (Government was wrong to contend that 8 U.S.C. § 1226(c) “was ambiguous,” such that deference under Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), was appropriate; however, Government’s position was “substantially justified” because case presented a novel issue on which there was little precedent); Pottgieser, 906 F.2d at 1324 (government’s reading of Social Security statute contrary to its plain language was substantially justified because “the Secretary’s litigation position had a reasonable basis and the Social Security statutes [are] complex”); Yoffe, 775 F.2d at 450 (although Government misread U.S. Treasury regulations to allow for the private, rather than public, sale of abandoned merchandise, reviewing court did “not think that the government should be found to have acted without substantial justification because it did not foresee how the court of appeals would interpret the regulations”); S. Or. Citizens Against Toxic Sprays v. Watt, 556 F.Supp. 155, 157 (D.Ore.1983) (Government was substantially justified where contravened regulation was “a convoluted regulation, difficult to interpret” and there was “little case law to guide the Government”), aff'd sub nom. S. Or. Citizens Against Toxic Sprays v. Clark, 720 F.2d 1475, 1481 (9th Cir.1983) (affirming denial of EAJA fees because, although the appeals court found that the regulation was not “difficult to interpret” but was rather “straightforward and means what it says, ... [t]he analysis required by the regulation is exceptional ... [and] the only reported case interpreting the ... regulation before this decision supported the government’s position”).[16]
Similarly, here, the regulation at issue is complex; the question of whether a plain *108 language analysis would suffice to interpret the regulation was a close one, especially given that 5 of 11 Judges to explore the issue determined that the regulation was not clear;[17] no court had ever interpreted the regulation in a manner contrary to the way the Secretary interpreted it; and the Secretary’s interpretation presented a reasonable attempt to resolve a difficult question. See, e.g., White, 412 F.3d at 1316. That the Federal Circuit has now provided an authoritative interpretation of that regulation does not change the fact that, on July 31, 2014, the Board could be understood if it found the regulation both “complex” and “exceptional.” See Stillwell, 6 Vet.App. at 303; see also Meinhold, 123 F.3d at 1278. Additionally, at the time the Agency acted, this Court had held en banc that the regulation was ambiguous and that the Secretary’s interpretation was reasonable, a determination that the Board was without authority to second-guess. See Tobler, 2 Vet.App. at 11. The Federal Circuit’s citation to an additional reason— public policy—for disagreeing with the Secretary’s interpretation does not rob this Court of the ability to hold that interpretation reasonable, for all of the reasons listed above, when analyzing the Agency position for EAJA purposes, and without the benefit of hindsight, nor does it absolve this Court of the responsibility to make an independent determination of reasonableness. Compare Bates, 398 F.3d at 1361 (Federal Circuit holds that the Secretary’s interpretation had “no basis in the statutory language, legislative history, or case authority”), with Bates, 20 Vet.App. at 192 (Secretary’s interpretation was substantially justified); see also Gonzales, 408 F.3d at 620 (merely stating that the merits court “soundly rejected the government’s arguments” does not establish a lack of substantial justification),
J. Misapplied Dicta from Patrick Does Not Rescue the Majority’s Analysis
Dicta from Patrick, which the majority quotes as if it were binding precedent, *109 does not change the analysis. The holding of Patrick, as noted above, was that this Court had applied an erroneous legal test, because it “improperly focused on only one factor.” 668 F.3d at 1332. The observation cited by the majority, regarding plain language and legislative history of statutes, was not necessary to the determination that the case must be remanded for a totality-of-the-circumstances analysis and thus is not binding on this Court. See McDaniel v. Sanchez, 452 U.S. 130, 141, 101 S.Ct. 2224, 68 L.Ed.2d 724 (1981) (“[Djictum unnecessary to the decision in [a] case ... [is] not controlling in this case[.]”). The Federal Circuit did not hold that the Government’s interpretation lacked substantial justification because it interpreted a statute contrary to its plain meaning and legislative history. Indeed, the Federal Circuit has determined that it cannot make such a holding. See Bowey, 218 F.3d at 1378 (“[DJetermining substantial justification requires the application of law to facts. Since such inquiries are specifically excluded from our jurisdictional grant, see 38 U.S.C. § 7292(d)(2), we must remand this case to allow the Court of Appeals for Veterans Claims to decide whether the government’s position was, in fact, substantially justified at the time it was adopted, based on the record at the time.”).
After mistaking Patrick’s dicta for a holding, the majority misreads the dicta. The language cited by the majority reads: “Where ... the government interprets a statute in a manner that is contrary to its plain language and unsupported by its legislative history, it will prove difficult to establish substantial justification.” 668 F.3d at 1330-31 (emphasis added). In other words, where the situation is similar to that in Bates, involving an Agency’s misconstruing Congress’s words and misreading congressional history, it will prove “difficult”—though, clearly, not impossible, see Bates, 20 Vet.App. at 192—to establish that the Agency’s misconstruction was reasonable. See Patrick, 668 F.3d at 1333 (“[I]t would be hard to imagine how it could be held that one had been substantially justified in defying the will of Congress by interpreting a statute in a manner contrary to its plain language and legislative history.” (citations and internal quotation marks omitted)). The Federal Circuit said nothing in Patrick, even in passing, about interpretations that contradict statutes but do not contradict legislative history. And here there has been no holding that the Government’s interpretation of § 3.321(b)(1) was contrary to legislative history.[18]
Additionally, unlike the Secretary in Patrick, the Secretary here was not interpreting a statute; he was interpreting his own regulation (and, as stated above, there is no support for the majority’s suggestion that the Secretary’s interpretation was inconsistent with or unreasonable in light of any statute). Although the canons of regulatory construction are the same as those of statutory construction, where the question is one of prospective reasonableness, as noted above, an Agency is on much more stable ground in asserting that its construction of its own words is “reasonable” than in stating that its construction of Congress’s words is reasonable. *110 See Decker, 133 S.Ct. at 1337; Skidmore, 323 U.S. at 140, 65 S.Ct. 161. A reasonable Secretary might well make a different calculation when faced with his own regulatory language that he believes to be ambiguous than when faced with statutory language that he believes possesses the same ambiguity. See Felton, 7 Vet.App. at 284; see also Saysana, 614 F.3d at 4. Accordingly, whatever one thinks of the accuracy of the Federal Circuit’s prediction in Patrick, which is that, when two specific factors are against the Secretary’s interpretation, that interpretation will have a steep hill to climb before being deemed substantially justified, neither of those factors are present in this case.
III. CONCLUSION
For the reasons stated above, I believe that the balance of factors in the totality-of-the-circumstances analysis weighs in the Secretary’s favor on the question of whether the Secretary’s position was so unreasonable in fact and law that he should pay the appellant’s legal fees. The Secretary’s arguments on a novel question about his regulation to this Court in Johnson I, which included practical considerations and his longstanding interpretation, this Court’s en banc decision in his favor citing those same arguments, his decision not to seek a stay for all Board decisions involving § 3.321(b)(1) following that favorable en banc decision, and his decision to agree to a prompt remand of Mr. Butts’s Board decision following Johnson II, made both his administrative and litigation positions in this case “justified to a degree that could satisfy a reasonable person.” Underwood, 487 U.S. at 565, 108 S.Ct. 2541. I dissent from the majority’s attempt to short-circuit the totality-of-the-circumstances analysis by citing to dicta from the Federal Circuit about what factors might make a substantial justification analysis more or less difficult. Additionally, I dissent from the majority’s reliance on the Federal Circuit’s merits determination in Johnson II, even though that merits determination did not purport to address substantial justification and even though the Secretary did not have that determination as a pertinent fact before him when deciding whether to move for a stay in Mr. Butts’s case. Finally, I join Judge Lance in having grave doubts as to the impossible position in which this ruling, if it stands, places the Secretary in future cases, as he makes the Hobson’s Choice of whether to follow this Court’s binding authority, as we have instructed him time and time again that he must, or to gainsay that authority in a misguided attempt to avoid paying attorney fees and expenses.

. The Secretary’s argument correctly anticipated a decision of this Court, applying Johnson II, that postdated oral argument. See Yancy v. McDonald, 27 Vet.App. 484, 495 (2016) ("[T]he Board is required to address whether referral for extraschedular consideration is warranted for a veteran’s disabilities on a collective basis only when that issue is argued by the claimant or reasonably raised by the record through evidence of the collective impact of the claimant's service-connected disabilities.”).

. The majority observes: "By arguing that his interpretation was entitled to deference during litigation, the Secretary does not meet his burden of demonstrating substantial justification at the administrative stage.” Ante at 86. This observation mistakes the purpose of the above discussion and confuses the litigation phase in Mr. Johnson’s case with the litigation phase in Mr. Butts's case, At the litigation phase in Mr. Butts’s case, the Secretary simply agreed to a prompt remand. For today's purposes, the Secretary need not show that his position at the litigation phase of Johnson I was reasonable. It is sufficient that, having received the Court’s judgment in Johnson I, the Agency was reasonable in relying on that judgment when it was adjudicating future appeals,

. Although the majority contends that the Secretary’s acknowledgment that some Board decisions might have mistakenly made collective extraschedular referral decisions over the years shows that he had "weak support for his assertion that he had long applied the erroneous regulatory interpretation," ante at 85, the majority fails to explain how lack of perfection in applying the Secretary's interpretation in hundreds of Board decisions over the years demonstrates that the Secretary's policy was not longstanding. See Fed. Express Corp., 552 U.S. at 400, 128 S.Ct. 1147 (noting that "[s]ome degree of inconsistent treatment is unavoidable when the agency processes over 175,000 inquiries a year”).

. As the Federal Circuit appeared to recognize, its policy observation was dicta. See Myore v. Nicholson, 489 F.3d 1207, 1211 (Fed.Cir.2007) (“If the statutory language is clear and unambiguous, the inquiry ends with the plain meaning.”); Cacciola v. Gibson, 27 Vet.App. 45, 52 (2014) ("If the meaning of the regulation is clear from its language, that is the end of the matter.” (citation and internal quotation marks omitted)); see also Johnson II, 762 F.3d at 1366 ("We further note that, while policy arguments would not, in any case, persuade us to depart from the plain language of the regulation .... ” (emphasis added)). However, because, as stated above, the substantial justification inquiry "does not exclude any valid issue from consideration,” White, 412 F.3d at 1317, I do not fault the majority for including this observation as a relevant part of the Federal Circuit’s merits determination. I note merely that, although we are bound by the Federal Circuit’s plain language interpretation of the regulation, we are not bound by its dicta on public policy. See Toro, 383 F.3d at 1335.

. Bates v. Nicholson, 398 F.3d 1355, 1361 (Fed.Cir.2005).

. The majority attempts to distinguish the particular facts of each of the above-cited cases from the present case, contending that they each contain particular factors that make each case unique. Ante at 85-86 n. 6. True, the cases are all, to a certain extent, unique, because the statutes and the regulations at issue in the cases are different from that at issue in the present case. The majority misses that these cases are cited to show that this case possesses factors in common with each of these cases, and to illustrate that, contrary to the majority’s central assumption, plain language is not the end of the substantial justification analysis, but the beginning. As in Bates, the Federal Circuit's result here was "not easy to predict”; as in S. Or. Citizens, even if one could consider § 3.321(b)(1) "straightforward,” the analysis required of that regulation was complex; as in Saysana, Yoffe, and White, the issue of whether § 3.321(b)(1) required collective evaluations was novel—it had never before been directly raised. The majority also confusingly states that the cases are cited "for the proposition that an agency can be substantially justified even when it is wrong.” Ante at 85 n. 6. That proposition needs only one citation: Under *108 wood, 487 U.S. at 566 n. 2, 108 S.Ct. 2541 ("[A] position can be justified even though it is not correct.”). The above cases are cited, instead, for the proposition that the Government can be—and often is—substantially justified even where its interpretation runs contrary to the plain language of a statute or a regulation. I also note that the majority seems to have misread Pottgieser. Compare ante at 86 n. 6 (stating that Pottgieser did not involve a plain meaning interpretation), with Pottgieser, 906 F.2d at 1322-23 (holding, contrary to the Agency's reading, "under the plain language of the statute, costs of service are different than premiums, and premiums are not included in the definition of 'medical assistance’ ” and also holding that "nothing in the legislative history” supported the Government’s reading; further holding that, "[w]e do not find the statute ambiguous or Congressional intent unclear, but we nevertheless reject the Secretary’s argument” that the Court should defer to his reading of the statute; and further holding that "the Secretary’s position in his brief conflicts with regulations promulgated by his department”).

. I was one of three Veterans Court Judges who found the regulation’s language clear, joining Judge Davis in dissenting in Johnson I. I find nothing inconsistent or remarkable about viewing the regulatory language as clear and unambiguous, as I expressed in Johnson I, but viewing the Secretary’s adopting and arguing a position that the language was ambiguous—and his interpretation thereof due deference—as reasonable, all things considered, and an issue worthy of the lengthy briefing and opinion-drafting process that characterized the Johnson I decision. See Saysana, 614 F.3d at 4 (although Government was wrong about whether statute was ambiguous, "the question of whether § 1226(c) was ambiguous, and therefore whether courts had to defer to a reasonable administrative interpretation of the statute, was one of first impression,” and, "as such, it was appropriate for the [Gjovernment to seek specific instruction from the court on this issue”).

. The Federal Circuit did not address legislative history, and I note that the issue in the present case is a murky one. See Johnson I, 26 Vet.App. at 257 (Kasold, C.J., dissenting) (noting that the language of the original 1930 provision “is unclear—ambiguous—as to whether an extraschedular disability rating could be predicated on a multiple-disability basis, because the rule simply indicates that such a rating would be based on the reduction in average earning capacity compared to the average worker 'suffering a similar disability’ ”).